**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| THOMAS MCNAMARA, RAYMOND ROSS, ANDREW SCHULTZ, JOSH SMOTHERMAN, DONALD SHAW, DAVID HAMILTON, LAURENCE WHITE, et al.,<br><br>      Plaintiffs,<br><br>      -against-<br><br>GENERAL MOTORS LLC,<br><br>      Defendant. | COMPLAINT – CLASS ACTION<br><br>DEMAND FOR JURY TRIAL<br><br><br>CASE NO. |

## INTRODUCTION

1.  To fix an engine defect of its own making, Defendant General Motors LLC ("GM") has cast the owners of some 600,000 trucks and SUVs out of the frying pan and into the fire. Following an investigation conducted by the National Highway Traffic Safety Administration ("NHTSA"), GM admitted it had a major defect in its 6.2-liter V-8 engines that was causing catastrophic engine failure (the "Engine Defect"). As part of a recall remedy, GM is now requiring owners to start using higher-viscosity motor oil. Thicker oil may (or may not) help mitigate the Engine Defect, but it will also materially decrease fuel economy and require owners to purchase hundreds of extra gallons of gasoline over their vehicles' lifespans.

2.  Thus, as the result of the underlying defect and GM's recall remedy, owners are presented with two bad options: do nothing and risk catastrophic engine failure or get the recall and pay hundreds of dollars more for gasoline.

3.  Plaintiffs Thomas McNamara**,** Raymond Ross, Andrew Schultz, Josh Smotherman, David Hamilton, Donald Shaw, and Laurence White, on behalf of themselves and

all others similarly situated (the "Classes"), bring this action to recover the economic damages they suffered from GM's misconduct, and allege the following against GM based, where applicable, on personal knowledge, information and belief, public corporate admissions, and the pre-filing investigation of counsel.

## **FACTUAL ALLEGATIONS**

4.     On January 16, 2025, the National Highway Traffic Safety Administration ("NHTSA") and GM opened an investigation into failures in 6.2-liter V-8 engines equipped in certain GM trucks and SUVs.

5.     According to an "engine teardown analysis" there were two problems with the engines "(1) rod-bearing damage from sediment on connecting rods and crankshaft-oil galleries; and (2) out of specification crankshaft dimensions and surface finish"—both of which "are attributable to supplier manufacturing and quality issues." 25V-284 Safety Recall Report at 4. As a result of these defects, the engines were failing at an alarming rate. Indeed, the investigation "identified 28,102 field complaints or incidents . . . of which 14,332 involved allegations of loss of propulsion." *Id.* at 5.

6.     This is a serious safety issue. According to NHTSA's report, "[i]f the engine fails during vehicle operation, the vehicle will lose propulsion," which, perhaps obviously, "increase[es] the risk of a crash." *Id.*

7.      Given the seriousness of the defect and the high failure rates, GM was soon forced to admit it had a big problem on its hands. On April 28, 2025, just a few months after NHTSA opened its investigation, GM issued a complete stop-sale and recall.

8.     The scope of the recall is massive. It covers 597,630 GM vehicles in the U.S. equipped with a 6.2-liter V-8 engine (RPO L87; the "Class Engine"), including the model year 2021 – 2024 Cadillac Escalade and Escalade ESV; Chevrolet Silverado 1500, Suburban, and

Tahoe; and GMC Sierra 1500, Yukon, and Yukon XL (the "Class Vehicles" or "Recalled Vehicles"). *See* NHTSA April 28, 2025, Recall Letter.

9.      Every one of these nearly 600,000 Class Vehicles now must be delivered to an authorized dealer for an engine "inspect[ion]." It is not entirely clear what this inspection will entail, but, at a minimum, dealers will be checking for diagnostic code P0016, which indicates misalignment between the crankshaft and camshaft. Class Vehicles with that diagnostic code, and any others that fail inspection, will then be "quarantine[d]" for future engine repair or replacement. Recall Dealer Bulletin at 2. NHTSA estimates approximately 3% of the population will require repair. 5V-284 Safety Recall Report at 1.

10.      Per the terms of the recall, Class Vehicles that pass the visual inspection—that is, those that will not receive immediate engine repair—will be outfitted with a new oil filter and cap. They will also receive a new Owner's Manual insert explaining that, moving forward, the Vehicles will require a higher-viscosity, dexos R SAE 0W-40 motor oil. This replaces the lower-viscosity 0W-20 oil that was recommended when GM originally sold the Class Vehicles and used in the fuel economy certification process.

11.      According to GM, "the thicker viscosity oil offers an increased further level of protection" necessary to avoid future engine failures. Safety Recall FAQ, Answer 4. Or, put differently, without the thicker oil, the engines could seize up and fail.

12.      Whether the recall inspection program will actually identify all engines primed to fail or prevent future engine failures remains to be seen. But one thing is for sure—it will come at significant cost to consumers.

13.      The reason is that thicker (higher viscosity) motor oil materially increases fuel consumption. "Thinner oils flow more easily, reducing resistance and allowing the engine to

operate more smoothly. This translates to less energy—or fuel—required to pump the oil, which means improved fuel economy." *The Impact of Oil Viscosity on Engine Performance*, Driven Racing Oil (Feb. 14, 2025), available at: https://www.drivenracingoil.com/blogs/news/the-impact-of-oil-viscosity-on-engine-performance. Thicker oils have the opposite effect and "hinder fuel efficiency." *Id.*

14.     This is particularly true where, as here, GM is requiring consumers to use oil (0W-40) that is a full two grades thicker than the original (0W-20). As a point of reference, the dynamic viscosity of 0W-40 oil is more than 50% greater than that of 0W-20 oil at common operating temperatures.

15.     The precise degree of the fuel economy impact from using a higher viscosity motor oil depends on the specifics of the engine, but the differential between the lower-viscosity (0W-20) and higher-viscosity (0W-40) oil is generally understood to be at least 3-4%. This is confirmed by a number of well-respected industry sources and academic studies.[1]

16.     If anything, this is likely to be an underestimate of the fuel economy deterioration in the recalled engines, in part because of their reliance on a technology called Dynamic Fuel Management ("DFM"). In short, at light loads, DFM deactivates certain cylinders and increases the load on the remaining cylinders, resulting in more favorable efficiency conditions. With the

---

[1] *See, e.g.*, Fernando Rovai, et al., *Engine Lubricant Impact in Light-Vehicle Fuel Economy: A Combined Numerical Simulation and Experimental Validation* (Mar. 22, 2025) (3% difference in fuel economy between 5W-40 and 5W-20), available at: https://www.mdpi.com/2075-4442/13/4/137; Yimin Mo et al, *Study on the Influence of Low-Viscosity Engine Oil on Engine Friction and Vehicle Worldwide Harmonized Light Vehicles Test Cycle Fuel Economy* (Sept. 22, 2020) (2.08% fuel economy difference between 5W-30, which is less viscous than 0W-40, and 0W-20), available at: https://saemobilus.sae.org/papers/study-influence-low-viscosity-engine-oil-engine-friction-vehicle-worldwide-harmonized-light-vehicles-test-cycle-fuel-economy-2020-01-5062; Alexander Tullo, *Engine oil becomes critical as automakers look to boost gas mileage* (Feb. 3, 2019) (estimating 3% difference), available at: https://cen.acs.org/business/specialty-chemicals/Engine-oil-becomes-critical-automakers/97/i5.

change to 0W-40 oil, the parasitic load (friction) in the engine is increased, thereby reducing the amount of cylinder deactivation (and fuel economy savings) potential. Thus, the fuel economy depreciation in these engines is likely to materially exceed the standard 3-4%.[2]

17.     Regardless, even 3-4% can make a big difference. Take, for example, a 2024 Cadillac Escalade, with an estimated 16 MPG combined fuel economy. Over 120,000 miles,[3] the truck will need 7,500 gallons (120,000 miles / 16 mpg). With the thicker oil required by the recall, 16 MPG becomes 15.5 MPG (16 *0.97 = 15.5), which means the truck will now need 7,742 gallons to travel the same distance. That's an extra 242 gallons of gasoline. Assume a conservative $4/gallon for the premium gasoline recommended for this engine, and those extra gallons will cost owners almost $1,000.

18.     Testing will demonstrate the precise effects of the thicker oil required by the recall, but suffice it to say that the financial harm will be significant both on an individual and classwide basis.

19.     This significant increase in ownership cost would be material to any reasonable consumer. But if there were any doubts about the importance of efficiency in today's motor vehicle market, GM's own advertising dispels them. As shown in a few representative examples below, GM repeatedly touted the efficiency of the Class Engine and the Class Vehicles because it knew what all reasonable consumers know: gasoline is expensive, and money matters.

---

[2] Given the highly complex nature of modern engines and their calibrations, it is likely the change in motor oil will have other detrimental consequences, too, including impacts on drivability and torque.

[3] This, too, is a Defendant-friendly estimate. GM regularly markets the longevity and durability of the class vehicles, boasting that they can surpass even 200,000 of useful life. *See, e.g.*, https://www.cadillacatservice.com/blogs/3708/how-long-does-a-new-cadillac-typically-last ("A new Cadillac typically drives between 150,000 and 200,000 miles with proper maintenance.") https://www.rydellcadillac.com/blogs/3685/how-long-do-cadillacs-last ("The Cadillac Escalade ESV is among the top cars that can surpass 200,000 miles.").



**6.2L V-8, L87**

## STRONG HERITAGE MEETS EFFICIENCY

The L87 builds upon the previous 6.2L L86 with integral components for Automatic Start/Stop capability and available Dynamic Fuel Management (DFM) for even greater efficiency. Efficient, robust technologies including Direction Injection, Variable Valve Timing, oil-jet piston cooling, and a two-stage oil pump continue to part of the 6.2L heritage.



GM full size truck L87 engine shown

### 6.2L V8 ENGINE

The standard 6.2L 420-hp† V8 is paired with an intelligent 10-speed automatic transmission that moves among gears in a smooth, efficient fashion. Engine technologies such as Continuously Variable Valve Timing, Direct Injection and Dynamic Fuel Management also help ensure this power plant's 460 lb-ft of torque† (623 Nm) is harnessed efficiently.



20.     On top of that, the Engine Defect and the decreased fuel efficiency has and will continue to depreciate the resale value of the Class Vehicles.

21.     Plaintiffs bring this action to recover the material economic losses they have suffered as a result of GM's misconduct. As detailed below, the claims include three brought on behalf of the Nationwide Class and multiple brought on behalf of each State Class.

22.     Among the latter are claims for breach of express warranty. At issue are warranties GM provided Plaintiffs and Class members for "repairs, including parts and labor, to correct any defect in materials or workmanship" in the Class Vehicles. For many Class Vehicles, the express warranty terms include 3 years/36,000 miles of "bumper to bumper" coverage and 5 years/60,000 miles for a Powertrain warranty covering the engine and related components.[4] The warranty term for Cadillac-branded Class Vehicles runs longer, at 4 years/50,000 miles for bumper to bumper coverage, and 6 years/70,000 miles for the Powertrain coverage.[5]

23.     The warranty terms became part of the basis of the bargain when Plaintiffs and Class members purchased or leased their Class Vehicles.

24.     Plaintiffs and each Class member have had sufficient direct dealings with either Defendant or its agents (including dealerships) to establish privity of contract between Defendant, on the one hand, and Plaintiffs and each Class member, on the other hand, as to the express and implied warranties described in the Claims for Relief below.

25.     Nonetheless, privity is not required here because Plaintiffs and each Class member are intended third-party beneficiaries of contracts between Defendant and its dealers, and of its implied warranties. The dealers were not intended to be the ultimate consumers of the Class Vehicles and have no rights under the warranty agreements provided with the Class Vehicles; the warranty agreements were designed for and intended to benefit consumers only.

---

[4] *See, e.g.*, https://www.gmc.com/owners/warranty-protection-plans; https://www.chevrolet.com/owners/warranty.

[5] *See, e.g.*, https://www.cadillac.com/ownership/warranty-repairs

26.     Plaintiffs bring this action to recover the material economic losses they have suffered as a result of GM's misconduct.

## THE PARTIES

I.     **Plaintiffs**

27.     Plaintiff **Thomas McNamara** (for the purpose of this paragraph, "Plaintiff"), a citizen of Pennsylvania, residing in Abington, Pennsylvania, purchased a new 2021 Chevrolet Tahoe with a 6.2L V8 engine (for the purpose of this paragraph, the "Class Vehicle") on or around September 2020, from a dealer in Jenkintown, Pennsylvania. Plaintiff decided to purchase the Class Vehicle based in part on GM's representations and omissions regarding the vehicle's reliability, performance, cost of ownership, and fuel economy. Prior to purchasing the Class Vehicle and his previous Class Vehicle, Plaintiff reviewed various sources, including GM's websites. Plaintiff did not know that the Class Vehicle had a defect that could lead to catastrophic failure or that, in an effort to remedy the Engine Defect, GM would require owners to use a higher-viscosity motor oil that would materially decrease the vehicle's fuel economy. If Plaintiff had been aware of the Engine Defect or the consequences of the recall, Plaintiff would not have bought or would have paid less for the Class Vehicle. Furthermore, Plaintiff will have to pay more for fuel during his possession of the vehicle than he would have had it not contained the defect and achieved the represented fuel economy. Plaintiff has therefore suffered a concrete injury.

28.     Plaintiff **Raymond Ross** (for the purpose of this paragraph, "Plaintiff"), a citizen of Pennsylvania, residing in Audubon, Pennsylvania, purchased a new 2024 Yukon with a 6.2L V8 engine (for the purpose of this paragraph, the "Class Vehicle") on or around December 2024, from a dealer in Boyertown, Pennsylvania. Plaintiff decided to purchase the Class Vehicle based in part on GM's representations and omissions regarding the vehicle's reliability, performance,

cost of ownership, and fuel economy. Prior to purchasing the Class Vehicle and his previous Class Vehicle, Plaintiff reviewed various sources, including GM's websites. Plaintiff did not know that the Class Vehicle had a defect that could lead to catastrophic failure or that, in an effort to remedy the Engine Defect, GM would require owners to use a higher-viscosity motor oil that would materially decrease the vehicle's fuel economy. If Plaintiff had been aware of the Engine Defect or the consequences of the recall, Plaintiff would not have bought or would have paid less for the Class Vehicle. Furthermore, Plaintiff will have to pay more for fuel during his possession of the vehicle than he would have had it not contained the defect and achieved the represented fuel economy. Plaintiff has therefore suffered a concrete injury.

29.    Plaintiff **Donald Shaw** (for the purpose of this paragraph, "Plaintiff"), a citizen of North Carolina, residing in High Point, North Carolina, purchased a used 2023 Cadillac Escalade with a 6.2L V8 engine (for the purpose of this paragraph, the "Class Vehicle") on or around April 30, 2025, from a dealer in Greensboro, North Carolina. As part of the purchase, Plaintiff traded in a different Class Vehicle, a 2022 Cadillac Escalade with a 6.2L V8 engine. Plaintiff decided to purchase the Class Vehicle based in part on GM's representations and omissions regarding the vehicle's reliability, performance, cost of ownership, and fuel economy. Prior to purchasing the Class Vehicle and his previous Class Vehicle, Plaintiff reviewed various sources, including GM's websites. Plaintiff did not know that the Class Vehicle had a defect that could lead to catastrophic failure or that, in an effort to remedy the Engine Defect, GM would require owners to use a higher-viscosity motor oil that would materially decrease the vehicle's fuel economy. If Plaintiff had been aware of the Engine Defect or the consequences of the recall, Plaintiff would not have bought or would have paid less for the Class Vehicle. Furthermore, Plaintiff will have to pay more for fuel during his possession of the vehicle than he would have

had it not contained the defect and achieved the represented fuel economy. Plaintiff has therefore suffered a concrete injury.

30.     Plaintiff **Andrew Schultz** (for the purpose of this paragraph, "Plaintiff"), a citizen of New York, residing in Lockport, New York, purchased a new 2022 GMC Sierra 1500 with a 6.2L V8 engine (for the purpose of this paragraph, the "Class Vehicle") on or around April 2022, from an authorized dealer in Lockport, New York. Plaintiff decided to purchase the Class Vehicle based in part on GM's representations and omissions regarding the vehicle's reliability, performance, cost of ownership, and fuel economy. Prior to purchasing the Class Vehicle, Plaintiff reviewed various sources, including GM's websites. Plaintiff did not know that the Class Vehicle had a defect that could lead to catastrophic failure or that, in an effort to remedy the Engine Defect, GM would require owners to use a higher-viscosity motor oil that would materially decrease the vehicle's fuel economy. If Plaintiff had been aware of the Engine Defect or the consequences of the recall, Plaintiff would not have bought or would have paid less for the Class Vehicle. Furthermore, Plaintiff will have to pay more for fuel during his possession of the vehicle than he would have had it not contained the defect and achieved the represented fuel economy. Plaintiff has therefore suffered a concrete injury.

31.     Plaintiff **David Hamilton** (for the purpose of this paragraph, "Plaintiff"), a citizen of Maryland, residing in California, Maryland, purchased a new 2024 GMC Sierra 1500 with a 6.2L V8 engine (for the purpose of this paragraph, the "Class Vehicle") on or around April 2024, from an authorized dealer in California, Maryland. Plaintiff decided to purchase the Class Vehicle based in part on GM's representations and omissions regarding the vehicle's reliability, performance, cost of ownership, and fuel economy. Prior to purchasing the Class Vehicle, Plaintiff reviewed various sources, including GM's websites. Plaintiff did not know that the

Class Vehicle had a defect that could lead to catastrophic failure or that, in an effort to remedy the Engine Defect, GM would require owners to use a higher-viscosity motor oil that would materially decrease the vehicle's fuel economy. If Plaintiff had been aware of the Engine Defect or the consequences of the recall, Plaintiff would not have bought or would have paid less for the Class Vehicle. Furthermore, Plaintiff will have to pay more for fuel during his possession of the vehicle than he would have had it not contained the defect and achieved the represented fuel economy. Plaintiff has therefore suffered a concrete injury.

32.     Plaintiff **Josh Smotherman** (for the purpose of this paragraph, "Plaintiff"), a citizen of California, residing in Rocklin, California, purchased a used 2024 Cadillac Escalade with a 6.2L V8 engine (for the purpose of this paragraph, the "Class Vehicle") on or around March 16, 2025, from a dealer in Rocklin, California. Plaintiff decided to purchase the Class Vehicle based in part on GM's representations and omissions regarding the vehicle's reliability, performance, cost of ownership, and fuel economy. Prior to purchasing the Class Vehicle and his previous Class Vehicle, Plaintiff reviewed various sources, including GM's websites. Plaintiff did not know that the Class Vehicle had a defect that could lead to catastrophic failure or that, in an effort to remedy the Engine Defect, GM would require owners to use a higher-viscosity motor oil that would materially decrease the vehicle's fuel economy. If Plaintiff had been aware of the Engine Defect or the consequences of the recall, Plaintiff would not have bought or would have paid less for the Class Vehicle. Furthermore, Plaintiff will have to pay more for fuel during his possession of the vehicle than he would have had it not contained the defect and achieved the represented fuel economy. Plaintiff has therefore suffered a concrete injury.

33.     Plaintiff **Laurence White** (for the purpose of this paragraph, "Plaintiff"), a citizen of California, residing in San Diego, California, purchased a used 2022 Cadillac Escalade with a

6.2L V8 engine (for the purpose of this paragraph, the "Class Vehicle") on or around January 2025, from an authorized dealer in El Paso, Texas. Plaintiff decided to purchase the Class Vehicle based in part on GM's representations and omissions regarding the vehicle's reliability, performance, cost of ownership, and fuel economy. Prior to purchasing the Class Vehicle and his previous Class Vehicle, Plaintiff reviewed various sources, including GM's websites. Plaintiff did not know that the Class Vehicle had a defect that could lead to catastrophic failure or that, in an effort to remedy the Engine Defect, GM would require owners to use a higher-viscosity motor oil that would materially decrease the vehicle's fuel economy. If Plaintiff had been aware of the Engine Defect or the consequences of the recall, Plaintiff would not have bought or would have paid less for the Class Vehicle. Furthermore, Plaintiff will have to pay more for fuel during his possession of the vehicle than he would have had it not contained the defect and achieved the represented fuel economy. Plaintiff has therefore suffered a concrete injury.

## II.    Defendant

34.    **General Motors LLC ("GM LLC" or "GM")** is a Delaware limited liability company with its principal place of business located at 300 Renaissance Center, Detroit, Michigan, and is a citizen of the States of Delaware and Michigan. GM LLC is registered to do business in Pennsylvania.[6]

| Filing Information ⇕ | Initial Filing Date ⇕ | Status ⇕ | Entity Type ⇕ | Formed In ⇕ | Address ⇕ |
|---|---|---|---|---|---|
| General Motors LLC (3912561) ❯ | 10/19/2009 | Active | Foreign Limited Liability Company | DELAWARE | Corporation Service Company |

GM manufactures the Class Engine at its Tonawanda Propulsion manufacturing facility in Buffalo, New York.

---

[6] https://file.dos.pa.gov/search/business.

## JURISDICTION & VENUE

35.     Jurisdiction is proper pursuant to the Class Action Fairness Act, 28 U.S.C.

§ 1332(d), because at least one member of the proposed Class is of diverse citizenship from one

Defendant, and the aggregate amount in controversy exceeds $5,000,000, exclusive of interest

and costs.

36.     GM LLC consented to general personal jurisdiction in courts in Pennsylvania by

registering to do business in the state. 42 Pa. Cons. Stat. § 5301(a)(2)(i), (b) (2019); *Mallory v.*

*Norfolk S. Ry. Co.*, 600 U.S. 122, 128 (2023).

37.     Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial

part of the events and/or omissions giving rise to the claims occurred in this District, and because

GM caused harm to Class members residing in this District, including Plaintiffs McNamara and

Ross.

## CLASS ACTION ALLEGATIONS

38.     Plaintiffs bring this lawsuit as a class action pursuant to Federal Rules of Civil

Procedure 23(a), (b)(1), (b)(2), (b)(3), and/or (c)(4), on behalf of themselves and all others

similarly situated as members of the following Nationwide Class and State Classes (collectively,

the "Classes").

39.     The proposed Nationwide Class includes all persons and entities that purchased or

leased a Class Vehicle in the United States, including its territories.

40.     Plaintiffs also propose separate State Classes for the states listed in the claims

below, each of which includes all persons and entities that purchased or leased a Class Vehicle in

that state.

41.     Excluded from the Classes are:

a.      Defendant's officers, directors and employees; Defendant's affiliates and affiliates' officers, directors and employees; Defendant's distributors and distributors' officers, directors and employees; and

b.      Judicial officers and their immediate family members and associated court staff assigned to this case.

42.     Plaintiffs reserve the right to amend the Class definitions if discovery and further investigation reveal that any Class should be expanded, reduced, divided into additional subclasses or State classes under Rule 23(c)(5), or modified in any other way.

43.     Certification of Plaintiffs' claims for class-wide treatment is appropriate because Plaintiffs can prove the elements of their claims on a class-wide basis using the same evidence as would be used in individual actions alleging the same claims. This action may also, in the Court's discretion, be maintained as a class action with respect to particular common issues.

44.     This action has been brought and may be properly maintained on behalf of each of the Classes proposed herein under Federal Rule of Civil Procedure 23 and satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of its provisions.

**I.      Numerosity: Federal Rule of Civil Procedure 23(a)(1)**

45.     The members of the Class are so numerous and geographically dispersed that individual joinder of all Class members is impracticable. Plaintiffs are informed and believe that there are approximately 600,000 Class Vehicles and at least as many members of the Class, as well as multiple hundreds or thousands of members in each State Class. The precise number and identities of Nationwide Class and State Class members may be ascertained from Defendant's records. Class members may be notified of the pendency of this action by recognized, Court-

approved notice dissemination methods, which may include U.S. mail, electronic mail, internet postings, and/or published notice.

## II.   Commonality and Predominance: Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3)

46.   This action involves common questions of law and fact, which predominate over any questions affecting individual Class members, including, without limitation:

a.   Whether Defendant engaged in the conduct alleged herein;

b.   Whether Defendant designed, advertised, marketed, distributed, leased, sold, or otherwise placed Class Vehicles into the stream of commerce in the United States and California;

c.   Whether Defendant owed a duty to disclose the Engine Defect and fuel economy effects of the Recall.

d.   Whether Defendant misrepresented the Class Vehicles' true performance and fuel economy or the effects of Recall on performance and fuel economy;

e.   Whether Defendant's conduct violates consumer protection statutes, warranty laws, and other laws as asserted herein;

f.   Whether Plaintiffs and the other Class members are entitled to equitable relief, including, but not limited to, restitution or injunctive relief; and

g.   Whether Plaintiffs and the other Class members are entitled to damages and other monetary relief and, if so, in what amount.

## III.   Typicality: Federal Rule of Civil Procedure 23(a)(3)

47.   Plaintiffs' claims are typical of the claims of the Class members whom they seek to represent under Fed. R. Civ. P. 23(a)(3) because Plaintiffs and each Class member purchased or leased a Class Vehicle and were comparably injured through Defendant's wrongful conduct as

described above. Plaintiffs and the other Class members suffered damages as a direct proximate result of the same wrongful practices by Defendant. Plaintiffs' claims arise from the same practices and courses of conduct that give rise to the claims of the other Class members. Plaintiffs' claims are based upon the same legal theories as the claims of the other Class members.

## IV.   Adequacy: Federal Rule of Civil Procedure 23(a)(4)

48.     Plaintiffs will fairly and adequately represent and protect the interests of the Class members as required by Fed. R. Civ. P. 23(a)(4). Plaintiffs' interests do not conflict with the interests of the Class members. Plaintiffs have retained counsel competent and experienced in complex class action litigation, including vehicle defect and fuel economy litigation and other complex class action proceedings. Plaintiffs intend to prosecute this action vigorously. Neither Plaintiffs nor their counsel have interests that conflict with the interests of the other Class members. Therefore, the interests of the Class members will be fairly and adequately protected.

## V.   Declaratory and Injunctive Relief: Federal Rule of Civil Procedure 23(b)(2)

49.     Defendant has acted or refused to act on grounds generally applicable to Plaintiffs and the other members of the Class, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to the Class as a whole.

## VI.   Superiority: Federal Rule of Civil Procedure 23(b)(3)

50.     A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in its management. The damages or other financial detriment suffered by Plaintiffs and the other Class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendant such that it would be impracticable for members of the Class to individually seek redress for Defendant's wrongful conduct.

51.     Even if Class members could afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments, and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

## ANY APPLICABLE STATUTES OF LIMITATION ARE TOLLED

### I.    Discovery Rule Tolling

52.     For the following reasons, any otherwise-applicable statutes of limitation have been tolled by the discovery rule with respect to all claims.

53.     Through the exercise of reasonable diligence, and within any applicable statutes of limitation, Plaintiffs and members of the proposed Class could not have discovered that Defendant was concealing and misrepresenting the Engine Defect, including its eventual effect on fuel economy.

54.     Until the recall announced on April 28, 2025, Plaintiffs and the other Class members could not have reasonably discovered, and did not know of facts that would have caused a reasonable person to suspect, that Class Vehicles included defective engine components that could lead to catastrophic failure or that a recall to address the defect would result in degraded fuel economy.

### II.    Tolling Due to Fraudulent Concealment

55.     Throughout the relevant time period, all applicable statutes of limitation have been tolled by Defendant's knowing and active fraudulent concealment of the facts alleged in this Complaint.

56.     Upon information and belief, prior to the date of this Complaint, Defendant knew of the manufacturing issues underlying the Engine Defect and its consequences for fuel

efficiency but continued to allow Plaintiffs and Class members to purchase and operate their Class Vehicles. In so doing, Defendant concealed and/or failed to notify Plaintiffs and Class members about the true nature of the Class Vehicles.

57. Instead of disclosing its deception, Defendant falsely represented the Class Vehicles' characteristics and performance.

58. Any otherwise-applicable statutes of limitation have therefore been tolled by Defendant's exclusive knowledge and active concealment of the facts alleged herein.

## III. **Estoppel**

59. Defendant was and is under a continuous duty to disclose to Plaintiffs and Class members the true character, quality, and nature of the Class Vehicles, including any defects and the consequences of mitigating those defects.

60. Although Defendant had the duty to disclose to Plaintiffs and Class members that it had engaged in the misconduct described in this Complaint, Defendant did not disclose the Engine Defect in Class Vehicles until the recall, and even then, did not disclose the effect the remedy would have on fuel economy. Defendant actively concealed the true character, quality, and nature of the Class Vehicles, and made misrepresentations about the quality, reliability, characteristics, and/or performance of the Class Vehicles. Plaintiffs and Class members reasonably relied upon Defendant's knowing and active concealment of these facts.

61. Based on the foregoing, Defendant is estopped from relying on any statutes of limitations in defense of this action.

**CAUSES OF ACTION**

**FIRST CAUSE OF ACTION**
**(NATIONWIDE COUNT 1: COMMON LAW FRAUD BY CONCEALMENT)**

62.     Plaintiffs re-allege and incorporate by reference all paragraphs as though fully set forth herein.

63.     Plaintiffs bring this claim on behalf of themselves and the Nationwide Class under Pennsylvania law or, in the alternative, under the laws of all fifty states and Puerto Rico, against Defendant. In the alternative, Plaintiffs bring claims on behalf of the State Classes under the respective State laws against Defendant.

64.     Defendant is liable for both fraudulent concealment and nondisclosure. See, e.g., Restatement (Second) of Torts §§ 550-51 (1977).

65.     Specifically, in the various channels of information through which Defendant sold and marketed Class Vehicles, Defendant committed fraud by concealing the Engine Defect and the effects thereof, including that a remedy would lead to worse fuel economy and higher operating costs.

66.     A reasonable customer would not have expected that their Class Vehicles contained the Engine Defect.

67.     Defendant knew that these facts about the Class Vehicles would be important to customers deciding to purchase or lease them. Defendant ensured that Plaintiffs and the Classes did not discover this information through actively concealing it. Defendant intended for Plaintiffs and the Classes to rely on its misrepresentations and omissions—which they did by paying for the Class Vehicles.

68.     Defendant had a duty to disclose the Engine Defect. The important facts were known and/or accessible only to the Defendant, including due to its involvement in the design,

installment, and testing of the Class Engine. Defendant also knew that these technical facts were not known to or reasonably discoverable by Plaintiffs and the Classes.

69.     Defendant also had a duty to disclose the true nature of the Class Vehicles in light of its affirmative statements about the Class Vehicles with respect to reliability and fuel economy.

70.     Defendant knew these statements were misleading, deceptive, and incomplete without the disclosure of the additional facts set forth above regarding the Engine Defect.

71.     Defendant's deceptive actions harmed Plaintiffs and the Classes. Because Defendant fraudulently concealed the truth about the Class Vehicles, customers who paid for the Class Vehicles suffered economic losses. Plaintiffs suffered damages including but not limited to overpaying for vehicles that did not perform as represented and reasonably expected and paying for additional gasoline over the Class Vehicles' lifespan. Accordingly, Defendant is liable to Plaintiffs and the Classes for damages in an amount to be proven at trial.

72.     Defendant's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud; in reckless disregard of the rights of Plaintiffs and the Classes; and to enrich itself. Its misconduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount shall be determined according to proof at trial.

## SECOND CAUSE OF ACTION
### (NATIONWIDE COUNT II: UNJUST ENRICHMENT)

73.     Plaintiffs incorporate by reference paragraphs 1-61 above as though fully set forth herein.

74.     Plaintiffs bring this claim on behalf of themselves and the Nationwide Class under Pennsylvania law or, in the alternative, under the laws of all fifty states and Puerto Rico, against

Defendant. In the alternative, Plaintiffs bring claims on behalf of the State Classes under the respective State laws against Defendant.

75.     By reason of its conduct, Defendant caused damages to Plaintiffs and the Classes. Plaintiff and the Classes conferred a benefit on Defendant by overpaying for Class Vehicles at prices that were artificially inflated by Defendant's misrepresentations, concealment, and omissions alleged above regarding the true nature of the Class Vehicles.

76.     As a result of Defendant's deception and omissions, Plaintiffs and members of the Classes were not aware of the true facts concerning the Class Vehicles.

77.     Plaintiffs and members of the Classes did not benefit from the Defendant's misconduct.

78.     Defendant knowingly benefitted from its unjust conduct. It sold and leased the Class Vehicles for more than what the vehicles were worth, and/or accepted the inflated benefits from the sale and lease of the Class Vehicles, at the expense of Plaintiffs and the Classes.

79.     Plaintiffs and the Classes conferred tangible and material economic benefits upon Defendant when they purchased or leased the Class Vehicles. Defendant profits from sales and leases of Class Vehicles, including through GM's authorized dealership network.

80.     Defendant readily accepted and retained these benefits from Plaintiffs and the Classes. Plaintiffs and the Classes would not have purchased or leased the Class Vehicles, or would have paid less for them, had they known of the truth about these vehicles at the time of purchase or lease. Therefore, Defendant profited from the sale and lease of the Class Vehicles to the detriment and expense of Plaintiffs and the Classes.

81.     It is inequitable and unconscionable for Defendant to retain these benefits because they sold defective vehicles, concealed the Engine Defect, and issued a recall that will degrade

the Class Vehicles' fuel economy and other characteristics.  Plaintiffs and members of the

Classes would not have purchased or leased the Class Vehicles or would have paid less for them,

had Defendant not engaged in these misrepresentations, concealment, and omissions.

82.     Plaintiffs and the Classes do not have an adequate remedy at law.

83.     Equity cannot in good conscience permit Defendant to retain the benefits that it

derived from Plaintiffs and the Classes through unjust and unlawful acts, and therefore restitution

or disgorgement of the amount of Defendant's unjust enrichment is necessary.

84.     Plaintiffs plead this claim separately as well as in the alternative to their claims

for damages under Fed. R. Civ. P. 8(a)(3).

### THIRD CAUSE OF ACTION
### (NATIONWIDE COUNT III: BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY—UNIFORM COMMERCIAL CODE)

85.     Plaintiffs re-allege and incorporate by reference all paragraphs as though fully set

forth herein.

86.     Plaintiffs bring this claim on behalf of themselves and the Nationwide Class under

Pennsylvania law or, in the alternative, under the laws of all fifty states and Puerto Rico, against

Defendant. All states (except Louisiana which has its own analog) have adopted Uniform

Commercial Code § 2-314, which provides that every contract for sale includes an implied

warranty that the goods are merchantable. This common question of merchantability is the

essence of an implied warranty claim and predominates over any potential differences among the

states' individual implied warranty laws.

87.     In the alternative, as detailed in the State-specific counts below, Plaintiffs bring

claims on behalf of the State Classes under the respective State laws, against Defendant.

88.     Defendant is liable for breach of the implied warranty of merchantability. See,

e.g., U.C.C. §§ 2-314, 2A-212.

89.     Defendant is and was at all relevant times a "merchant" and a "seller" of vehicles under U.C.C. § 2-314.

90.     With respect to leases, Defendant is and was at all relevant times a "lessor" of vehicles under U.C.C. § 2A-212.

91.     The Class Vehicles are and were at all relevant times "goods" within the meaning of U.C.C. § 2-314 and § 2A-212.

92.     Warranties that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used are implied by law pursuant to U.C.C. § 2-314 and § 2A-212.

93.     These Class Vehicles, when sold or leased and at all times thereafter, contained a serious Engine Defect that can lead to catastrophic engine failure and attendant safety risks. The Class Vehicles were therefore not merchantable, not fit for the ordinary purpose for which vehicles are used, and did not conform to the promises or affirmations of fact made on their labels.

94.     As a direct and proximate result of Defendant's breach of the implied warranty of merchantability, Plaintiffs and Nationwide Class members have been damaged in an amount to be proven at trial.

**FOURTH CAUSE OF ACTION**
**(PENNSYLVANIA COUNT I: VIOLATIONS OF THE PENNSYLVANIA UNFAIR**
**TRADE PRACTICES AND CONSUMER PROTECTION LAW, 73 P.S. § 201-1 *ET SEQ.*)**

95.     Plaintiffs incorporate by reference all allegations in this Complaint as though fully set forth herein.

96.     Plaintiffs McNamara and Ross (for the purposes of this count, "Plaintiffs") bring this claim on behalf of themselves and the Pennsylvania State Class against Defendant.

97.     Plaintiffs, Defendant, and the Pennsylvania State Class are "persons" within the meaning of 73 P.S. § 201-2(2).

98.     Defendant engaged in "trade" or "commerce" within the meaning of 73 P.S. § 201-2(3).

99.     The Pennsylvania Unfair Trade Practices Act ("Pennsylvania UTPA") prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce." 73 P.S. § 201 3.

100.     In the course of its business, Defendant concealed and suppressed material facts concerning the Class Vehicles, including about the Engine Defect and the effect of the recall to remedy the Engine Defect.

101.     Plaintiffs and Pennsylvania State Class members had no way of discerning that Defendant's representations were false and misleading because Pennsylvania State Class members did not have access to Defendant's internal testing and complaint data and analysis.

102.     Defendant thus violated the Act by, at minimum: representing that Class Vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that Class Vehicles are of a particular standard, quality, and grade when they are not; advertising Class Vehicles with the intent not to sell or lease them as advertised; and representing that the subject of a transaction involving Class Vehicles has been supplied in accordance with a previous representation when it has not.

103.     Defendant intentionally and knowingly misrepresented material facts regarding the Class Vehicles with intent to mislead the Pennsylvania State Class.

104.     Defendant knew or should have known that its conduct violated the Pennsylvania UTPA.

105.     Defendant owed the Pennsylvania State Class a duty to disclose the illegality and public health risks, the true nature of the Class Vehicles, because Defendant:

a.      possessed exclusive knowledge that it was manufacturing, selling, and distributing vehicles throughout the United States that did not perform as advertised;

b.      intentionally concealed the foregoing from Pennsylvania State Class members; and/or

c.      made incomplete representations about the Class Vehicles' characteristics, performance, and fuel economy while purposefully withholding material facts that contradicted these representations.

106.     Defendant's concealment of the Class Vehicles' true characteristics, performance, and fuel economy was material to the Pennsylvania State Class.

107.     Defendant's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiffs and the Pennsylvania State Class, about characteristics, performance, and fuel economy of the Class Vehicles, the quality of the Defendant's brands, and the true value of the Class Vehicles.

108.     Defendant's violations present a continuing risk to the Pennsylvania State Class as well as to the general public, particularly given the increased risk of vehicle crash posed by the Engine Defect. Defendant's unlawful acts and practices complained of herein affect the public interest.

109.      Plaintiffs and Pennsylvania State Class members suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's misrepresentations and concealment of and failure to disclose material information. Defendant had an ongoing duty to all its customers to refrain from unfair and deceptive practices under the Pennsylvania UTPA.

All owners of Class Vehicles suffered ascertainable loss as a result of Defendant's deceptive and unfair acts and practices made in the course of Defendant's business.

110.    As a direct and proximate result of Defendant's violations of the Pennsylvania UTPA, Pennsylvania State Class members have suffered injury-in-fact and/or actual damage.

111.    Pursuant to 73 P.S. § 201-9.2(a), Plaintiffs and the Pennsylvania State Class seek an order enjoining Defendant's unfair and/or deceptive acts or practices, damages, punitive damages, and attorneys' fees, costs, and any other just and proper relief available under the Pennsylvania UTPA.

**FIFTH CAUSE OF ACTION**
**(PENNSYLVANIA COUNT II: BREACH OF EXPRESS WARRANTY,**
**13. PA. CONS. STAT. §§ 2313 AND 2A210)**

112.    Plaintiffs incorporate by reference all allegations in this Complaint as though fully set forth herein.

113.    Plaintiffs McNamara and Ross (for the purposes of this count, "Plaintiffs") bring this claim on behalf of themselves and the Pennsylvania State Class against Defendant.

114.    Defendant is and was at all relevant times a "merchant" with respect to motor vehicles under 13 Pa. Cons. Stat. §§ 2104 and 2A103(a), and a "seller" of motor vehicles under § 2103(a).

115.    With respect to leases, Defendant is and was at all relevant times a "lessor" of motor vehicles under 13 Pa. Cons. Stat. § 2A103(a).

116.    The Class Vehicles are and were at all relevant times "goods" within the meaning of 13 Pa. Cons. Stat. §§ 2105(a) and 2A103(a).

117.    In connection with the purchase or lease of each one of its new GMC and Chevrolet vehicles, Defendant provided an express warranty for a period of 3 years/36,000 miles of "bumper to bumper" coverage and 5 years/60,000 miles for a Powertrain warranty covering

the engine and related components. For each one of its new Cadillac-branded vehicles,
Defendant provided an express warranty for a period of 4 years/50,000 miles for bumper to
bumper coverage, and 6 years/70,000 miles for the Powertrain coverage. These warranties exist
to provide "repairs, including parts and labor, to correct any defect in materials or workmanship"
in the Class Vehicles.

118.    Defendant also made numerous representations, descriptions, and promises to
Pennsylvania State Class members regarding the performance and efficiency of their vehicles.

119.    Defendant's warranties formed a basis of the bargain that was reached when
consumers purchased or leased Class Vehicles.

120.    Despite the existence of warranties, Defendant failed to inform Plaintiffs and
Pennsylvania State Class members that the Class Vehicles contained a serious Engine Defect that
can lead to catastrophic engine failure and attendant safety risks.

121.    Defendant breached the express warranty promising to repair and correct
Defendant's defect in materials and workmanship. Defendant has not repaired or adjusted, and
has been unable to repair or adjust, the Class Vehicles' materials and workmanship defects.

122.    Affording Defendant a reasonable opportunity to cure its breach of written
warranties would be unnecessary and futile here.

123.    Furthermore, the limited warranty promising to repair and correct Defendant's
defects in materials and workmanship fails in its essential purpose because the contractual
remedy is insufficient to make Pennsylvania State Class members whole and because Defendant
has failed and/or refused to adequately provide the promised remedies within a reasonable time.

124.    Accordingly, recovery by Plaintiffs and Pennsylvania State Class members is not restricted to the limited warranty promising to repair and correct Defendant's defect in materials and workmanship, and they seek all remedies as allowed by law.

125.    Also, as alleged in more detail herein, at the time Defendant warranted and sold or leased the Class Vehicles, it knew that the Class Vehicles were inherently defective and did not conform to their warranties; further, Defendant wrongfully and fraudulently concealed material facts regarding the Class Vehicles. Pennsylvania State Class members were therefore induced to purchase or lease the Class Vehicles under false and/or fraudulent pretenses.

126.    Moreover, many of the injuries flowing from the Class Vehicles cannot be resolved through the limited remedy of repairing and correcting Defendant's defects in materials and workmanship as many incidental and consequential damages have already been suffered because of Defendant's misconduct as alleged herein, and because of its failure and/or continued failure to provide such limited remedy within a reasonable time, and any limitation on the Pennsylvania State Class members' remedies would be insufficient to make them whole.

127.    Finally, because of Defendant's breach of warranty as set forth herein, Pennsylvania State Class members assert, as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to them of the purchase or lease price of all Class Vehicles currently owned or leased, and for such other incidental and consequential damages as allowed.

128.    Defendant was provided reasonable notice of these issues by way of its own internal testing and complaint data and analysis, the regulatory recall, and a pre-suit notice letter from Plaintiffs.

129.     As a direct and proximate result of Defendant's breach of express warranties, Pennsylvania State Class members have been damaged in an amount to be determined at trial.

**SIXTH CAUSE OF ACTION**
**(PENNSYLVANIA COUNT III: IMPLIED WARRANTY OF MERCHANTABILITY, 13. PA. CONS. STAT. §§ 2314 AND 2A212)**

130.     Plaintiffs re-allege and incorporate by reference all paragraphs as though fully set forth herein.

131.     Plaintiffs McNamara and Ross (for the purposes of this count, "Plaintiffs") bring this claim on behalf of themselves and the Pennsylvania State Class against Defendant.

132.     Defendant is and was at all relevant times a "merchant" with respect to motor vehicles under 13 Pa. Cons. Stat. §§ 2104 and 2A103(a), and a "seller" of motor vehicles under § 2103(a).

133.     With respect to leases, Defendant is and was at all relevant times a "lessor" of motor vehicles under 13 Pa. Cons. Stat. § 2A103(a).

134.     The Class Vehicles are and were at all relevant times "goods" within the meaning of 13 Pa. Cons. Stat. §§ 2105(a) and 2A103(a).

135.     A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to 13 Pa. Cons. Stat. §§ 2314 and 2A212.

136.     These Class Vehicles, when sold or leased and at all times thereafter, contained a serious Engine Defect that can lead to catastrophic engine failure and attendant safety risks. The Class Vehicles were therefore not merchantable, not fit for the ordinary purpose for which vehicles are used, and did not conform to the promises or affirmations of fact made on their labels.

-29-

137.    Defendant was provided reasonable notice of these issues by way of its own internal testing and complaint data and analysis, the regulatory recall, and a pre-suit notice letter sent by Plaintiffs.

138.    As a direct and proximate result of Defendant's breach of the implied warranty of merchantability, Pennsylvania State Class members have been damaged in an amount to be proven at trial.

<u>SEVENTH CAUSE OF ACTION</u>
<u>(CALIFORNIA COUNT I: VIOLATION OF CALIFORNIA CONSUMERS LEGAL</u>
<u>REMEDIES ACT CAL BUS. & PROF. CODE § 1750, ET SEQ.)</u>

139.    Plaintiffs incorporate by reference all allegations in this Complaint as though fully set forth herein.

140.    Plaintiffs Smotherman and White (for the purposes of this count, "Plaintiffs") brings this claim on behalf of themselves and the California State Class against Defendant.

141.    Plaintiffs and members of the California State Class were deceived by Defendant's failure to disclose the Class Vehicles' true characteristics, performance, and fuel economy.

142.    Defendant engaged in unfair or deceptive acts or practices when, in the course of its business, it, among other acts and practices, knowingly made materially incomplete representations as to the characteristics, uses and benefits of the Class Vehicles.

143.    In the various channels of information through which Defendant sold and marketed Class Vehicles, Defendant failed to disclose material information concerning the Class Vehicles, which it had a duty to disclose. Defendants had a duty to disclose the Engine Defect because, as detailed above, (a) Defendant knew about the Engine Defect; (b) Defendants had exclusive knowledge of material facts not known to the general public or the other California State Class members; (c) Defendant actively concealed material facts concerning the Engine

-30-

Defect and effects of the recall; and (d) Defendant made partial representations about the Class Vehicles that were misleading because it did not disclose the full truth.

144.    Defendant intended for Plaintiffs and California State Class members to rely on it to provide adequately designed, and adequately manufactured automobiles and to honestly and accurately reveal the problems described throughout this Complaint.

145.    Defendant intentionally failed or refused to disclose the Class Vehicles' true characteristics, performance, and fuel economy to consumers.

146.    Defendant's conduct and deceptive omissions were intended to induce Plaintiffs and California State Class members to believe that the Class Vehicles were adequately designed and adequately manufactured automobiles.

147.    Defendant's conduct constitutes unfair acts or practices as defined by the California Consumers Legal Remedies Act (the "CLRA").

148.    Plaintiffs and the other California State Class members have suffered injury in fact and actual damages resulting from Defendant's material omissions.

149.    Plaintiffs and the California State Class seek an order enjoining Defendant's unfair or deceptive acts or practices, equitable relief, and any other just and proper relief available under the CLRA. The claim for equitable relief is brought in the alternative should Plaintiffs not have an adequate remedy at law.

150.    Defendant is on notice of the issues raised in this count and this Complaint by way of the investigation conducted by NHTSA and the resulting recall. Plaintiffs also sent a notice letter to Defendant in accordance with Cal. Civ. Code § 1782(a) of the CLRA, notifying Defendant of its alleged violations of Cal. Civ. Code § 1770(a) and demanding that Defendant correct or agree to correct the actions described therein within thirty (30) days of the notice

letter. If Defendant fails to do so, Plaintiffs will amend this Complaint as of right (or otherwise

seek leave to amend the Complaint) to include compensatory and monetary damages to which

Plaintiffs and California Class members are entitled under the CLRA.

**EIGHTH CAUSE OF ACTION**
**(CALIFORNIA COUNT II: VIOLATIONS OF THE CALIFORNIA UNFAIR**
**COMPETITION LAW CAL. BUS. & PROF. CODE § 17200 ET SEQ.)**

151.   Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

152.   Plaintiffs Smotherman and White (for the purposes of this count, "Plaintiffs")

brings this claim on behalf of themselves and the California State Class against Defendant.

153.   California Business and Professions Code § 17200 prohibits any "unlawful,

unfair, or fraudulent business act or practices." Defendant has engaged in unlawful, fraudulent,

and unfair business acts and practices in violation of the UCL.

154.   Defendant's conduct, as described herein, was and is fraudulent and in violation

of the UCL. Defendant's conduct violates the UCL in at least the following ways:

a.   by knowingly and intentionally concealing from Plaintiffs and California

State Class members that the Class Vehicles suffer from an Engine Defect while obtaining

money from the California State Class members;

b.   by marketing Class Vehicles as possessing functional and defect-free

engine systems; and

c.   by purposefully designing and manufacturing Class Vehicles that

contained a serious Engine Defect that can lead to catastrophic engine failure and attendants

safety risks.

155.   Defendant's misrepresentations and omissions alleged herein caused Plaintiffs

and the California State Class members to make their purchases or leases of their Class Vehicles.

Absent those misrepresentations and omissions, Plaintiffs and California State Class members

would not have purchased or leased these vehicles, would not have purchased or leased these Class Vehicles at the prices they paid, and/or would have purchased or leased less expensive alternative vehicles that did not have Engine Defects.

156.    Accordingly, Plaintiffs and California State Class members have suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's misrepresentations and its concealment of and failure to disclose material information.

157.    Plaintiffs requests that this Court enter such orders or judgments as may be necessary to enjoin Defendant from continuing its unfair, unlawful, and/or deceptive practices and to restore to members of the California State Class any money it acquired by unfair competition, including restitution and/or restitutionary disgorgement, as provided in Cal. Bus. & Prof. Code § 17203 and Cal. Bus. & Prof. Code § 3345; and for such other relief set forth below. The claim for equitable relief is brought in the alternative should Plaintiffs not have an adequate remedy at law.

**NINTH CAUSE OF ACTION**
**(CALIFORNIA COUNT III: VIOLATIONS OF THE CALIFORNIA FALSE**
**ADVERTISING LAW CAL. CIV. CODE § 17500 ET SEQ.)**

158.    Plaintiffs incorporate by reference all allegations in this Complaint as though fully set forth herein.

159.    Plaintiff Smotherman and White (for the purposes of this count, "Plaintiffs") brings this claim on behalf of themselves and the California State Class against Defendant.

160.    California Bus. & Prof. Code § 17500 states: "It is unlawful for any . . . corporation . . . with intent directly or indirectly to dispose of real or personal property . . . to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated . . . from this state before the public in any state, in any newspaper or other publication, or any advertising device, . . . or in any other manner or means whatever,

including over the Internet, any statement . . . which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

161.    Defendant caused to be made or disseminated through California and the United States, through advertising, marketing and other publications, statements that were untrue or misleading, and which were known, or which by the exercise of reasonable care should have been known to Defendant, to be untrue and misleading to consumers, including California State Class members.

162.    Defendant has violated § 17500 because the misrepresentations and omissions regarding the reliability and functionality of Class Vehicles as set forth in this Complaint were material and likely to deceive a reasonable consumer.

163.    Plaintiffs and the other California State Class members have suffered an injury in fact, including the loss of money or property, as a result of Defendant's unfair, unlawful, and/or deceptive practices. In purchasing or leasing their Class Vehicles, the California State Class relied on the misrepresentations and/or omissions of Defendant with respect to the performance and reliability of the Class Vehicles. Defendant's representations turned out not to be true because the Class Vehicles have an Engine Defect that can lead to catastrophic engine failure and attendant safety risks.

164.    All of the wrongful conduct alleged herein occurred, and continues to occur, in the conduct of Defendant's business. Defendant's wrongful conduct is part of a pattern or generalized course of conduct that is still perpetuated and repeated, both in the State of California and nationwide.

165.    The California State Class requests that this Court enter such orders or judgments as may be necessary to enjoin Defendant from continuing its unfair, unlawful, and/or deceptive practices and to restore to the California State Class any money Defendant acquired by unfair competition, including restitution and/or restitutionary disgorgement, and for such other relief set forth below. The claim for equitable relief is brought in the alternative should Plaintiffs not have an adequate remedy at law.

**TENTH CAUSE OF ACTION**
**(CALIFORNIA COUNT IV: BREACH OF EXPRESS WARRANTY CAL.**
**COM. CODE §§ 2313 AND 10210)**

166.    Plaintiffs re-allege and incorporate by reference all preceding allegations as though fully set forth herein.

167.     Plaintiffs Smotherman and White (for the purposes of this count, "Plaintiff") brings this claim on behalf of themselves and the California State Class against Defendant.

168.    Defendant is and was at all relevant times a "merchant" with respect to motor vehicles under Cal. Com. Code §§ 2104(1) and 10103(c), and a "seller" of motor vehicles under § 2103(1)(d).

169.    With respect to leases, Defendant is and was at all relevant times a "lessor" of motor vehicles under Cal. Com. Code § 10103(a)(16).

170.    The Class Vehicles are and were at all relevant times "goods" within the meaning of Cal. Com. Code §§ 2105(1) and 10103(a)(8).

171.    In connection with the purchase or lease of each one of its new GMC and Chevrolet vehicles, Defendant provided an express warranty for a period of 3 years/36,000 miles of "bumper to bumper" coverage and 5 years/60,000 miles for a Powertrain warranty covering the engine and related components. For each one of its new Cadillac-branded vehicles, Defendant provided an express warranty for a period of 4 years/50,000 miles for bumper to

bumper coverage, and 6 years/70,000 miles for the Powertrain coverage. These warranties exist to provide "repairs, including parts and labor, to correct any defect in materials or workmanship" in the Class Vehicles.

172.    Defendant also made numerous representations, descriptions, and promises to California State Class members regarding the performance and emission controls of their vehicles.

173.    Defendant's warranties formed a basis of the bargain that was reached when consumers purchased or leased Class Vehicles.

174.    Despite the existence of warranties, Defendant failed to inform Plaintiffs and California State Class members that the Class Vehicles were contained a serious Engine Defect that can lead to catastrophic engine failure and attendant safety risks.

175.    Defendant breached the express warranty promising to repair and correct Defendant's defect in materials and workmanship. Defendant has not repaired or adjusted, and has been unable to repair or adjust, the Class Vehicles' materials and workmanship defects.

176.    Affording Defendant a reasonable opportunity to cure its breach of written warranties would be unnecessary and futile here.

177.    Furthermore, the limited warranty promising to repair and correct Defendant's defect in materials and workmanship fails in its essential purpose because the contractual remedy is insufficient to make California State Class members whole and because Defendant has failed and/or have refused to adequately provide the promised remedies within a reasonable time.

178.    Accordingly, recovery by Plaintiffs and California State Class members is not restricted to the limited warranty promising to repair and correct Defendant's defect in materials and workmanship, and they seek all remedies as allowed by law.

179.    Also, as alleged in more detail herein, at the time Defendant warranted and sold or leased the Class Vehicles, they knew that the Class Vehicles were inherently defective and did not conform to their warranties; further, Defendant had wrongfully and fraudulently concealed material facts regarding the Class Vehicles. California State Class members were therefore induced to purchase or lease the Class Vehicles under false and/or fraudulent pretenses.

180.    Moreover, many of the injuries flowing from the Class Vehicles cannot be resolved through the limited remedy of repairing and correcting Defendant's defect in materials and workmanship as many incidental and consequential damages have already been suffered because of Defendant's conduct as alleged herein, and because of its failure and/or continued failure to provide such limited remedy within a reasonable time, and any limitation on Plaintiffs and California State Class members' remedies would be insufficient to make them whole.

181.    Finally, because of Defendant's breach of warranty as set forth herein, Plaintiffs and California State Class members assert, as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to them of the purchase or lease price of all Class Vehicles currently owned or leased, and for such other incidental and consequential damages as allowed.

182.    Defendant was provided reasonable notice of these issues by way of its own internal testing and complaint data and analysis, the regulatory recall, and a pre-suit notice letter sent by Plaintiffs.

183.    As a direct and proximate result of Defendant's breach of express warranties, California State Class members have been damaged in an amount to be determined at trial.

**ELEVENTH CAUSE OF ACTION**
**(CALIFORNIA COUNT V: BREACH OF IMPLIED WARRANTY OF**
**MERCHANTABILITY CAL. COM. CODE §§ 2314 AND 10212)**

184.    Plaintiffs re-allege and incorporate by reference all paragraphs as though fully set forth herein.

185.    Plaintiffs Smotherman and White (for the purposes of this count, "Plaintiffs") brings this claim on behalf of themselves and the California State Class against all Defendants.

186.    Defendant is and was at all relevant times a "merchant" with respect to motor vehicles under Cal. Com. Code §§ 2104(1) and 10103(c), and a "seller" of motor vehicles under § 2103(1)(d).

187.    With respect to leases, Defendant is and was at all relevant times a "lessor" of motor vehicles under Cal. Com. Code § 10103(a)(16).

188.    The Class Vehicles are and were at all relevant times "goods" within the meaning of Cal. Com. Code §§ 2105(1) and 10103(a)(8).

189.    A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to Cal. Com. Code §§ 2314 and 10212.

190.    These Class Vehicles, when sold or leased and at all times thereafter, contained a serious Engine Defect that can lead to catastrophic engine failure and attendants safety risks. The Class Vehicles were therefore not merchantable, not fit for the ordinary purpose for which vehicles are used, and did not conform to the promises or affirmations of fact made on their labels.

191.    Defendant was provided reasonable notice of these issues by way the investigation conducted by NHTSA and the resulting recall.

192.    As a direct and proximate result of Defendant's breach of the implied warranty of merchantability, Plaintiffs and California State Class members have been damaged in an amount to be proven at trial.

**TWELFTH CAUSE OF ACTION**
**(CALIFORNIA COUNT VI: VIOLATION OF SONG-BEVERLY CONSUMER WARRANTY ACT, BREACH OF IMPLIED WARRANTY CAL CIV. CODE § 1790, ET SEQ.)**

193.    Plaintiffs incorporate by reference all allegations in this Complaint as though fully set forth herein.

194.    Plaintiffs Smotherman and White (for the purposes of this count, "Plaintiffs") brings this claim on behalf of themselves and the California State Class against Defendant.

195.    Plaintiffs and members of the California State Class who purchased Class Vehicles in California are "buyers" within the meaning of Cal. Civ. Code § 1791.

196.    The Class Vehicles are "consumer goods" within the meaning of Cal. Civ. Code § 1791(a).

197.    Defendant is the "manufacturer" of the Class Vehicles within the meaning of Cal. Civ. Code § 1791(j).

198.    Defendant impliedly warranted to Plaintiffs and the other members of the California State Class that the Class Vehicles were "merchantable" within the meaning of Cal. Civ. Code §§ 1791.1(a) & 1792; however, the Class Vehicles do not have the quality that a buyer would reasonably expect.

199.    Cal. Civ. Code § 1791.1(a) states: "Implied warranty of merchantability" or "implied warranty that goods are merchantable" means that the consumer goods meet each of the following:

   a.    Pass without objection in the trade under the contract description.

      b.      Are fit for the ordinary purposes for which such goods are used.

      c.      Are adequately contained, packaged, and labeled.

      d.      Conform to the promises or affirmations of fact made on the container or label.

200.    The Class Vehicles would not pass without objection in the automotive trade because they contained a serious Engine Defect that can lead to catastrophic engine failure and attendants safety risks.

201.    Class Vehicles are not adequately labeled because the labeling fails to disclose the fact that they are defective.

202.    In the various channels of information through which Defendant sold and marketed Class Vehicles, Defendant failed to disclose material information concerning the Class Vehicles, which it had a duty to disclose. Defendant had a duty to disclose the defect because, as detailed above: (a) Defendants knew about the defect; (b) Defendants had exclusive knowledge of material facts not known to the general public or the other California State Class members; (c) Defendant actively concealed material facts from the general public and California State Class members concerning the Class Vehicles' true characteristics, performance, and fuel economy; and (d) Defendant made partial representations about the Class Vehicles that were misleading because they did not disclose the full truth. As detailed above, Defendant knew the information concerning the Engine Defect at the time of advertising and selling the Class Vehicles, all of which was intended to induce consumers to purchase the Class Vehicles.

203.    Defendant breached the implied warranty of merchantability by manufacturing and selling Class Vehicles that are defective. Furthermore, this defect has caused members of the

California State Class to not receive the benefit of their bargain and have caused the Class

Vehicles to depreciate in value.

204.    Plaintiffs and members of the California State Class have been damaged as a

result of the diminished value of Defendant's products.

205.    Under Cal. Civ. Code §§ 1791.1(d) & 1794, Plaintiffs and other members of the

California State Class are entitled to damages and other legal and equitable relief including, at

their election, the purchase price of their Class Vehicles, or the overpayment or diminution in

value of their Class Vehicles.

206.    Under Cal. Civ. Code § 1794, Plaintiffs and the other members of the California

State Class are entitled to costs and attorneys' fees.

## THIRTEENTH CAUSE OF ACTION
## (CALIFORNIA COUNT VII: VIOLATION OF THE SONG-BEVERLY CONSUMER PROTECTION ACT, BREACH OF EXPRESS WARRANTY CAL CIV. CODE § 1790, ET SEQ.)

207.    Plaintiffs incorporate by reference all allegations in this Complaint as though fully

set forth herein.

208.    Plaintiffs Smotherman and White (for the purposes of this count, "Plaintiffs")

brings this claim on behalf of themselves and the California State Class against all Defendants.

209.    Plaintiffs and Members of the California State Class who purchased or leased the

Class Vehicles in California are "buyers" within the meaning of California Civil Code § 1791(b).

210.    The Class Vehicles are "consumer goods" within the meaning of California Civil

Code § 1791(a).

211.    Defendant is a "manufacturer" of the Class Vehicles within the meaning of

California Civil Code § 1791(j).

212.    Defendant made express warranties to members of the California State Class within the meaning of California Civil Code §§ 1791.2 and 1793.2, as described above.

213.    As set forth above in detail, the Class Vehicles are defective because they contained a serious Engine Defect that can lead to catastrophic engine failure and attendants safety risks. The Class Vehicles were therefore not merchantable, not fit for the ordinary purpose for which vehicles are used, and did not conform to the promises or affirmations of fact made on their labels. were materially different from vehicles.

214.    As a result of Defendant's breach of their express warranties, members of the California State Class received goods whose defect substantially impairs their value to Plaintiffs and the other members of the California State Class. Plaintiffs and members of the California State Class have been damaged as a result of, inter alia, the diminished value of Defendant's products.

215.    Pursuant to California Civil Code §§ 1793.2 & 1794, Plaintiffs and members of the California State Class are entitled to damages and other legal and equitable relief including, at their election, the purchase price of their Class Vehicles, or the overpayment or diminution in value of their Class Vehicles.

216.    Pursuant to California Civil Code § 1794, the Class is entitled to costs and attorneys' fees.

**FOURTEENTH CAUSE OF ACTION**
**(MARYLAND COUNT I: VIOLATIONS OF THE MARYLAND CONSUMER PROTECTION ACT MD. CODE COM. LAW § 13-101 ET SEQ. – ON BEHALF OF THE MARYLAND STATE CLASS)**

217.    Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

218.    Plaintiff Hamilton (for the purposes of this count, "Plaintiff") brings this claim on behalf of himself and the Maryland State Class against Defendant.

219.    Defendant and the Maryland State Class are "persons" within the meaning of Md. Code Com. Law § 13-101(h).

220.    The Maryland Consumer Protection Act ("Maryland CPA") provides that a person may not engage in any unfair or deceptive trade practice in the sale of any consumer good. Md. Code Com. Law § 13-303. Defendant participated in misleading, false, or deceptive acts that violated the Maryland CPA.

221.    In the course of its business, Defendant concealed and suppressed material facts concerning the Class Vehicles, including about the Engine Defect and the effect of the recall to remedy the Engine Defect.

222.    Plaintiff and Maryland State Class members had no way of discerning that Defendant's representations were false and misleading because the Maryland State Class Members did not have access to Defendant's internal testing and complaint data and analysis.

223.    Defendant thus violated the Act by, at minimum: representing that Class Vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that Class Vehicles are of a particular standard, quality, and grade when they are not; advertising Class Vehicles with the intent not to sell or lease them as advertised; and representing that the subject of a transaction involving Class Vehicles has been supplied in accordance with a previous representation when it has not.

224.    Defendant intentionally and knowingly misrepresented material facts regarding the Class Vehicles with intent to mislead the Maryland State Class.

225.    Defendant knew or should have known that its conduct violated the Maryland CPA.

226.    Defendant owed the Maryland State Class a duty to disclose the illegality and public health risks, the true nature of the Class Vehicles, because Defendant:

a.    possessed exclusive knowledge that it was manufacturing, selling, and distributing vehicles throughout the United States that did not perform as advertised;

b.    intentionally concealed the foregoing from Maryland State Class members; and/or

c.    made incomplete representations about the Class Vehicles' characteristics, performance, and fuel economy while purposefully withholding material facts that contradicted these representations.

227.    Defendant's concealment of the Class Vehicles' true characteristics, performance, and fuel economy was material to the Maryland State Class.

228.    Defendant's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including the Maryland State Class, about characteristics, performance, and fuel economy of the Class Vehicles, the quality of Defendant's brands, and the true value of the Class Vehicles.

229.    Defendant's violations present a continuing risk to the Maryland State Class as well as to the general public, particularly given the increased risk of vehicle crash posed by the Engine Defect. Defendant's unlawful acts and practices complained of herein affect the public interest.

230.    Plaintiff and the Maryland State Class suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's misrepresentations and concealment of and failure to disclose material information. Defendant had an ongoing duty to its customers to refrain from unfair and deceptive practices under the Maryland CPA. All owners and lessees of

Class Vehicles suffered ascertainable loss as a result of Defendant's deceptive and unfair acts and practices made in the course of Defendant's business.

231.    As a direct and proximate result of Defendant's violations of the Maryland CPA, the Maryland State Class has suffered injury-in-fact and/or actual damage.

232.    Pursuant to Md. Code Com. Law § 13-408, the Maryland State Class seeks actual damages, attorneys' fees, and any other just and proper relief available under the Maryland CPA

**FIFTEENTH CAUSE OF ACTION**
**(MARYLAND COUNT II: MARYLAND LEMON LAW MD. CODE COM. LAW § 14-1501 ET SEQ. – ON BEHALF OF THE MARYLAND STATE CLASS)**

233.    Plaintiffs incorporate by reference all allegations in this Complaint as though fully set forth.

234.    Plaintiff Hamilton (for the purposes of this count, "Plaintiff") brings this claim on behalf of himself and the Maryland State Class against Defendant.

235.    Plaintiff and the Maryland State Class own or lease "motor vehicles" within the meaning of Md. Code, Com. Law § 14-1501(f), because these vehicles were registered in the state and fall within the categories of vehicles manufactured, assembled, or distributed by Defendant. These vehicles are not auto homes.

236.    Defendant is a "manufacturer" of the Class Vehicles within the meaning of Md. Code, Com. Law § 14-1501(d).

237.    The Maryland State Class members are "consumers" within the meaning of Md. Code Com. Law § 14-1501(b) because they: purchased the Class Vehicles, were transferred the Class Vehicles during the warranty period, or are otherwise entitled to the attendant terms of warranty.

238.    The Class Vehicles did not conform to their "warranties" under Md. Code Com. Law § 14-1501(g) during the warranty period because they had Engine Defects, and were therefore not fit for the ordinary purpose for which vehicles are used.

239.    Defendant had actual knowledge of the conformities during the "warranty period" within the meaning of Md. Code, Com. Law § 14-1501(e). But the nonconformities continued to exist throughout this term, as they have not been fixed. Plaintiff and Maryland State Class members are excused from notifying Defendant of the nonconformities because it was already fully aware of the problem and any repair attempt is futile.

240.    Defendant has had a reasonable opportunity to cure the nonconformities caused by the Engine Defect and resulting recall during the warranty period because of its actual knowledge of the nonconformities, but has not done so as required under Md. Code, Com. Law § 14-1502.

241.    Plaintiff and the Maryland State Class demands a full refund of the purchase price, including all license fees, registration fees, and any similar governmental charges. Md. Code Com. Law § 14-1502(c). Once payment has been tendered, Maryland State Class members will return their vehicles.

### SIXTEENTH CAUSE OF ACTION
### (MARYLAND COUNT III: BREACH OF EXPRESS WARRANTY
### MD. CODE COM. LAW §§ 2-313 AND 2A-210)

242.    Plaintiffs incorporate by reference all allegations in this Complaint as though fully set forth herein.

243.    Plaintiff Hamilton (for the purposes of this count, "Plaintiff") brings this claim on behalf of themselves and the Maryland State Class against Defendant.

244.    Defendant is and was at all relevant times a "merchant" with respect to motor vehicles under Md. Code Com. Law § 2-104(1) and a "seller" of motor vehicles under § 2-103(1)(d).

245.    With respect to leases, Defendant is and was at all relevant times a "lessor" of motor vehicles under Md. Code Com. Law § 2A-103(1)(p).

246.    The Class Vehicles are and were at all relevant times "goods" within the meaning of Md. Code Com. Law §§ 2-105(1) and 2a-103(1)(h).

247.    In connection with the purchase or lease of each one of its new GMC and Chevrolet vehicles, Defendant provided an express warranty for a period of 3 years/36,000 miles of "bumper to bumper" coverage and 5 years/60,000 miles for a Powertrain warranty covering the engine and related components. For each one of its new Cadillac-branded vehicles, Defendant provided an express warranty for a period of 4 years/50,000 miles for bumper to bumper coverage, and 6 years/70,000 miles for the Powertrain coverage. These warranties exist to provide "repairs, including parts and labor, to correct any defect in materials or workmanship" in the Class Vehicles.

248.    Defendant also made numerous representations, descriptions, and promises to Maryland State Class members regarding the performance and efficiency of their vehicles.

249.    Defendant's warranties formed a basis of the bargain that was reached when consumers purchased or leased Class Vehicles.

250.    Despite the existence of warranties, Defendant failed to inform Plaintiff and Maryland State Class members that the Class Vehicles contained a serious Engine Defect that can lead to catastrophic engine failure and attendant safety risks.

-47-

251.    Defendant breached the express warranty promising to repair and correct Defendant's defect in materials and workmanship. Defendant has not repaired or adjusted, and has been unable to repair or adjust, the Class Vehicles' materials and workmanship defects.

252.    Affording Defendant a reasonable opportunity to cure its breach of written warranties would be unnecessary and futile here.

253.    Furthermore, the limited warranty promising to repair and correct Defendant's defects in materials and workmanship fails in its essential purpose because the contractual remedy is insufficient to make Maryland State Class members whole and because Defendant has failed and/or have refused to adequately provide the promised remedies within a reasonable time.

254.    Accordingly, recovery by Plaintiff and Maryland State Class members is not restricted to the limited warranty promising to repair and correct Defendant's defect in materials and workmanship, and they seek all remedies as allowed by law.

255.    Also, as alleged in more detail herein, at the time Defendant warranted and sold or leased the Class Vehicles, it knew that the Class Vehicles were inherently defective and did not conform to their warranties; further, Defendant wrongfully and fraudulently concealed material facts regarding the Class Vehicles. Maryland State Class members were therefore induced to purchase or lease the Class Vehicles under false and/or fraudulent pretenses.

256.    Moreover, many of the injuries flowing from the Class Vehicles cannot be resolved through the limited remedy of repairing and correcting Defendant's defects in materials and workmanship as many incidental and consequential damages have already been suffered because of Defendant's misconduct as alleged herein, and because of its failure and/or continued failure to provide such limited remedy within a reasonable time, and any limitation on the Maryland State Class members' remedies would be insufficient to make them whole.

257.     Finally, because of Defendant's breach of warranty as set forth herein, Maryland State Class members assert, as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to them of the purchase or lease price of all Class Vehicles currently owned or leased, and for such other incidental and consequential damages as allowed.

258.     Defendant was provided reasonable notice of these issues by way the investigation conducted by NHTSA and the resulting recall.

259.     As a direct and proximate result of Defendant's breach of express warranties, Maryland State Class members have been damaged in an amount to be determined at trial.

### SEVENTEENTH CAUSE OF ACTION
### (MARYLAND COUNT IV: BREACH OF IMPLIED WARRANTY OF
### MERCHANTABILITY, MD. CODE COM. LAW §§ 2-314 AND 2A-212)

260.     Plaintiffs re-allege and incorporate by reference all paragraphs as though fully set forth herein.

261.     Plaintiff Hamilton (for the purposes of this count, "Plaintiff") brings this claim on behalf of himself and the Maryland State Class against Defendant.

262.     Defendant is and was at all relevant times a "merchant" with respect to motor vehicles under Md. Code Com. Law § 2-104(1) and a "seller" of motor vehicles under § 2-103(1)(d).

263.     With respect to leases, Defendant is and was at all relevant times a "lessor" of motor vehicles under Md. Code Com. Law § 2A-103(1)(p).

264.     The Class Vehicles are and were at all relevant times "goods" within the meaning of Md. Code Com. Law §§ 2-105(1) and 2a-103(1)(h).

265.    A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to Md. Code Com. Law §§ 2-314, and 2a-212.

266.    These Class Vehicles, when sold or leased and at all times thereafter, contained a serious Engine Defect that can lead to catastrophic engine failure and attendants safety risks. The Class Vehicles were therefore not merchantable, not fit for the ordinary purpose for which vehicles are used, and did not conform to the promises or affirmations of fact made on their labels.

267.    Defendant was provided reasonable notice of these issues by way of its own internal testing and complaint data and analysis, the regulatory recall, and a pre-suit notice letter sent by Plaintiffs.

268.    As a direct and proximate result of Defendant's breach of the implied warranty of merchantability, Maryland State Class members have been damaged in an amount to be proven at trial.

## EIGHTEENTH CAUSE OF ACTION
## (NEW YORK COUNT I: VIOLATIONS OF THE NEW YORK
## GENERAL BUSINESS LAW § 349)

269.    Plaintiffs re-allege and incorporate by reference all paragraphs as though fully set forth herein.

270.    Plaintiff Schultz (for the purposes of this count, "Plaintiff") brings this claim on behalf of himself and the New York State Class against Defendant.

271.    Plaintiff and the New York State Class members and Defendant are "persons" under N.Y. Gen. Bus. Law § 349(h), the New York Deceptive Acts and Practices Act ("NY DAPA").

272.     Defendant's actions as set forth herein occurred in the conduct of trade or commerce under the NY DAPA.

273.     The NY DAPA makes unlawful "[d]eceptive acts or practices in the conduct of any business, trade or commerce." N.Y. Gen. Bus. Law § 349. Defendant's conduct, as set forth herein, constitutes deceptive acts or practices under this section.

274.     In the course of its business, Defendant concealed and suppressed material facts concerning the Class Vehicles, including about the Engine Defect and the effect of the recall to remedy the Engine Defect.

275.     Plaintiff and New York State Class members had no way of discerning that Defendant's representations were false and misleading because Plaintiff and New York State Class members did not have access to Defendant's internal testing and complaint data and analysis.

276.     Defendant thus violated the Act by, at minimum: representing that Class Vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that Class Vehicles are of a particular standard, quality, and grade when they are not; advertising Class Vehicles with the intent not to sell or lease them as advertised; and representing that the subject of a transaction involving Class Vehicles has been supplied in accordance with a previous representation when it has not.

277.     Defendant intentionally and knowingly misrepresented material facts regarding the Class Vehicles with intent to mislead Plaintiff and the New York State Class.

278.     Defendant knew or should have known that its conduct violated the NY DAPA.

279.     Defendant owed Plaintiff and the New York State Class a duty to disclose the illegality and public health risks, the true nature of the Class Vehicles, because Defendant:

a.      possessed exclusive knowledge that it was manufacturing, selling, and distributing vehicles throughout the United States that did not perform as advertised;

b.      intentionally concealed the foregoing from New York State Class members; and/or

c.      made incomplete representations about the Class Vehicles' characteristics, performance, and fuel economy while purposefully withholding material facts that contradicted these representations.

280.    Defendant's concealment of the true characteristics of the Class Vehicles was material to Plaintiff and the New York State Class.

281.    Defendant's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiff and the New York State Class, about the true characteristics, performance, and fuel economy of the Class Vehicles, the quality of the Defendant's brands, and the true value of the Class Vehicles.

282.    Defendant's violations present a continuing risk to Plaintiff and the New York State Class as well as to the general public, particularly given the increased risk of vehicle crash posed by the Engine Defect. Defendant's unlawful acts and practices complained of herein affect the public interest.

283.    Plaintiff and New York State Class members suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's misrepresentations and concealment of and failure to disclose material information. Defendant had an ongoing duty to all its customers to refrain from unfair and deceptive practices under the NY DAPA. All owners of Class Vehicles suffered ascertainable loss as a result of Defendant's deceptive and unfair acts and practices made in the course of Defendant's business.

284.    As a direct and proximate result of Defendant's violations of the NY DAPA, Plaintiff and New York State Class members have suffered injury-in-fact and/or actual damage.

285.    As a result of the foregoing willful, knowing, and wrongful conduct of Defendant, Plaintiff and New York State Class members have been damaged in an amount to be proven at trial, and seek all just and proper remedies, including but not limited to actual damages or $50, whichever is greater, treble damages up to $1,000, punitive damages to the extent available under the law, reasonable attorneys' fees and costs, an order enjoining Defendant's deceptive and unfair conduct, and all other just and appropriate relief available under the NY DAPA.

## NINETEENTH CAUSE OF ACTION
## (NEW YORK COUNT II: VIOLATIONS OF THE NEW YORK GENERAL BUSINESS LAW § 350)

286.    Plaintiffs incorporate by reference all allegations in this Complaint as though fully set forth herein.

287.    Plaintiff Schultz (for the purposes of this count, "Plaintiff") brings this claim on behalf of himself and the New York State Class against Defendant.

288.    Defendant was engaged in the "conduct of business, trade or commerce," within the meaning of N.Y. Gen. Bus. Law § 350, the New York False Advertising Act ("NY FAA")

289.    The NY FAA makes unlawful "[f]alse advertising in the conduct of any business, trade or commerce." N.Y. Gen. Bus. Law § 350. False advertising includes "advertising, including labeling, of a commodity . . . if such advertising is misleading in a material respect," taking into account "the extent to which the advertising fails to reveal facts material in light of . . . representations [made] with respect to the commodity . . . ." N.Y. Gen. Bus. Law § 350-a.

290.    Defendant caused to be made or disseminated through New York, through advertising, marketing, and other publications, statements and omissions that were untrue or misleading, and that were known by Defendant, or that through the exercise of reasonable care

should have been known by Defendant, to be untrue and misleading to the New York State Class.

291.    Defendant made numerous material misrepresentations and omissions of fact with intent to mislead and deceive concerning the Class Vehicles, including about the Engine Defect and the effect of the recall to remedy the Engine Defect.

292.    The misrepresentations and omissions regarding the Class Vehicles' characteristics, performance, and fuel economy set forth above were material and likely to deceive a reasonable consumer.

293.    Defendant intentionally and knowingly misrepresented material facts regarding the Class Vehicles with intent to mislead the New York State Class.

294.    Defendant's false advertising was likely to and did in fact deceive reasonable consumers, including the New York State Class, about the true characteristics, performance, and fuel economy of the Class Vehicles, the quality of Defendant's brand, and the true value of the Class Vehicles.

295.    Defendant's violations of the NY FAA present a continuing risk to New York State Class members and to the general public, particularly given the increased risk of vehicle crash posed by the Engine Defect. Defendant's deceptive acts and practices affect the public interest.

296.    The Class Vehicles do not perform as advertised, making them far less valuable than advertised.

297.    New York State Class members have suffered injury-in-fact and/or actual damages and ascertainable loss as a direct and proximate result of Defendant's false advertising in violation of the NY FAA.

298.    The New York State Class seeks monetary relief against Defendant measured as the greater of (a) actual damages in an amount to be determined at trial, and (b) statutory damages in the amount of $500 each for New York State Class members. Because Defendant's conduct was committed willingly and knowingly, New York State Class members are entitled to recover three times actual damages, up to $10,000.

299.    The New York State Class also seeks an order enjoining Defendant's false advertising, attorneys' fees, and any other just and proper relief under N.Y. Gen. Bus. Law § 350.

**TWENTIETH CAUSE OF ACTION**
**(NEW YORK COUNT III: BREACH OF EXPRESS WARRANTY,**
**N.Y. U.C.C. LAW §§ 2-313 AND 2A-210 § 350)**

300.    Plaintiffs incorporate by reference all allegations in this Complaint as though fully set forth herein.

301.    Plaintiff Schultz (for the purposes of this count, "Plaintiff") brings this claim on behalf of themselves and the New York State Class against Defendant.

302.    Defendant is and was at all relevant times a "merchant" with respect to motor vehicles under N.Y. UCC Law § 2-104(1) and a "seller" of motor vehicles under § 2-103(1)(d).

303.    With respect to leases, Defendant is and was at all relevant times a "lessor" of motor vehicles under N.Y. UCC Law § 2A-103(1)(p).

304.    The Class Vehicles are and were at all relevant times "goods" within the meaning of N.Y. UCC Law §§ 2-105(1) and 2A-103(1)(h).

305.    In connection with the purchase or lease of each one of its new GMC and Chevrolet vehicles, Defendant provided an express warranty for a period of 3 years/36,000 miles of "bumper to bumper" coverage and 5 years/60,000 miles for a Powertrain warranty covering the engine and related components. For each one of its new Cadillac-branded vehicles,

-55-

Defendant provided an express warranty for a period of 4 years/50,000 miles for bumper to bumper coverage, and 6 years/70,000 miles for the Powertrain coverage. These warranties exist to provide "repairs, including parts and labor, to correct any defect in materials or workmanship" in the Class Vehicles.

306.     Defendant also made numerous representations, descriptions, and promises to New York State Class members regarding the performance and efficiency of its vehicles.

307.     Defendant's warranties formed a basis of the bargain that was reached when consumers purchased or leased Class Vehicles.

308.     Despite the existence of warranties, Defendant failed to inform Plaintiff and New York State Class members that the Class Vehicles contained a serious Engine Defect that can lead to catastrophic engine failure and attendant safety risks.

309.     Defendant breached the express warranty promising to repair and correct Defendant's defect in materials and workmanship. Defendant has not repaired or adjusted, and has been unable to repair or adjust, the Class Vehicles' materials and workmanship defects.

310.     Affording Defendant a reasonable opportunity to cure its breach of written warranties would be unnecessary and futile here.

311.     Furthermore, the limited warranty promising to repair and correct Defendant's defects in materials and workmanship fails in its essential purpose because the contractual remedy is insufficient to make New York State Class members whole and because Defendant has failed and/or have refused to adequately provide the promised remedies within a reasonable time.

312.     Accordingly, recovery by Plaintiff and New York State Class members is not restricted to the limited warranty promising to repair and correct Defendant's defect in materials and workmanship, and they seek all remedies as allowed by law.

313.    Also, as alleged in more detail herein, at the time Defendant warranted and sold or leased the Class Vehicles, it knew that the Class Vehicles were inherently defective and did not conform to their warranties; further, Defendant wrongfully and fraudulently concealed material facts regarding the Class Vehicles. New York State Class members were therefore induced to purchase or lease the Class Vehicles under false and/or fraudulent pretenses.

314.    Moreover, many of the injuries flowing from the Class Vehicles cannot be resolved through the limited remedy of repairing and correcting Defendant's defects in materials and workmanship as many incidental and consequential damages have already been suffered because of Defendant's misconduct as alleged herein, and because of its failure and/or continued failure to provide such limited remedy within a reasonable time, and any limitation on the New York State Class members' remedies would be insufficient to make them whole.

315.    Finally, because of Defendant's breach of warranty as set forth herein, New York State Class members assert, as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to them of the purchase or lease price of all Class Vehicles currently owned or leased, and for such other incidental and consequential damages as allowed.

316.    Defendant was provided reasonable notice of these issues by way of its own internal testing and complaint data and analysis, the regulatory recall, and a pre-suit notice letter sent by Plaintiffs.

317.    As a direct and proximate result of Defendant's breach of express warranties, New York State Class members have been damaged in an amount to be determined at trial.

## TWENTY-FIRST CAUSE OF ACTION
### (NEW YORK COUNT IV: BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY, N.Y. U.C.C. LAW §§ 2-314 and 2A-212 – ON BEHALF OF THE NEW YORK STATE CLASS)

318.    Plaintiffs re-allege and incorporate by reference all paragraphs as though fully set forth herein.

319.    Plaintiff Schultz (for the purposes of this count, "Plaintiff") brings this claim on behalf of himself and the New York State Class against Defendant.

320.    Defendant is and was at all relevant times a "merchant" with respect to motor vehicles under N.Y. UCC Law § 2-104(1) and a "seller" of motor vehicles under § 2-103(1)(d).

321.    With respect to leases, Defendant is and was at all relevant times a "lessor" of motor vehicles under N.Y. UCC Law § 2A-103(1)(p).

322.    The Class Vehicles are and were at all relevant times "goods" within the meaning of N.Y. UCC Law §§ 2-105(1) and 2A-103(1)(h).

323.    A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to N.Y. UCC Law §§ 2-314 and 2A-212.

324.    These Class Vehicles, when sold or leased and at all times thereafter, contained a serious Engine Defect that can lead to catastrophic engine failure and attendant safety risks. The Class Vehicles were therefore not merchantable, not fit for the ordinary purpose for which vehicles are used, and did not conform to the promises or affirmations of fact made on their labels.

325.    Defendant was provided reasonable notice of these issues by way of its own internal testing and complaint data and analysis, the regulatory recall, and a pre-suit notice letter sent by Plaintiffs.

326.     As a direct and proximate result of Defendant's breach of the implied warranty of merchantability, New York State Class members have been damaged in an amount to be proven at trial.

**TWENTY-SECOND CAUSE OF ACTION**
**(NORTH CAROLINA COUNT I: VIOLATIONS OF THE NORTH CAROLINA UNFAIR**
**AND DECEPTIVE ACTS AND PRACTICES ACT N.C. GEN. STAT. § 75-1.1 *ET SEQ.*)**

327.     Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

328.     Plaintiff Shaw (for the purposes of this count, "Plaintiff") brings this claim on behalf of himself and the North Carolina State Class against Defendant.

329.     Plaintiff and North Carolina State Class members are persons under the North Carolina Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. § 75-1.1, et seq. ("NCUDTPA").

330.     Defendant's acts and practices complained of herein were performed in the course of Defendant's trade or business and thus occurred in or affected "commerce," as defined in N.C. Gen. Stat. § 75-1.1(b).

331.     The NCUDTPA makes unlawful "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce[.]" The NCUDTPA provides a private right of action for any person injured "by reason of any act or thing done by any other person, firm or corporation in violation of" the NCUDTPA. N.C. Gen. Stat. § 75-16.

332.     In the course of its business, Defendant concealed and suppressed material facts concerning the Class Vehicles, including about the Engine Defect and the effect of the recall to remedy the Engine Defect.

333.     Plaintiff and North Carolina State Class members had no way of discerning that Defendant's representations were false and misleading because Plaintiff and North Carolina

State Class members did not have access to Defendant's internal testing and complaint data and analysis.

334.    Defendant thus violated the Act by, at minimum: representing that Class Vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that Class Vehicles are of a particular standard, quality, and grade when they are not; advertising Class Vehicles with the intent not to sell or lease them as advertised; and representing that the subject of a transaction involving Class Vehicles has been supplied in accordance with a previous representation when it has not.

335.    Defendant intentionally and knowingly misrepresented material facts regarding the Class Vehicles with intent to mislead Plaintiff and the North Carolina State Class.

336.    Defendant knew or should have known that its conduct violated the NCUDTPA.

337.    Defendant owed to Plaintiffs and the North Carolina State Class a duty to disclose the illegality and public health risks, the true nature of the Class Vehicles, because Defendant:

        a.    possessed exclusive knowledge that it was manufacturing, selling, and distributing vehicles throughout the United States that did not perform as advertised;

        b.    intentionally concealed the foregoing from Plaintiff and North Carolina State Class members; and/or

        c.    made incomplete representations about the Class Vehicles' characteristics, performance, and fuel economy while purposefully withholding material facts from Plaintiffs and the North Carolina State Class that contradicted these representations.

338.    Defendant's concealment of the Class Vehicles' true characteristics, performance, and fuel economy were material to Plaintiff and the North Carolina State Class.

339.     Defendant's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiff and the North Carolina State Class, about characteristics, performance, and fuel economy of the Class Vehicles, the quality of the Defendant's brands, and the true value of the Class Vehicles.

340.     Defendant's violations present a continuing risk to Plaintiffs and the North Carolina State Class, as well as to the general public, particularly given the increased risk of vehicle crash posed by the Engine Defect. Defendant's unlawful acts and practices complained of herein affect the public interest.

341.     Plaintiff and North Carolina State Class members suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's misrepresentations and concealment of and failure to disclose material information. Defendant had an ongoing duty to its customers to refrain from unfair and deceptive practices under the NCUDTPA. All owners of Class Vehicles suffered ascertainable loss as a result of Defendant's deceptive and unfair acts and practices made in the course of Defendant's business.

342.     As a result of the foregoing wrongful conduct of Defendant, Plaintiff and the North Carolina State Class have been damaged in an amount to be proven at trial, and seek all just and proper remedies, including but not limited to treble damages, an order enjoining Defendant's deceptive and unfair conduct, court costs and reasonable attorneys' fees, and any other just and proper relief available under N.C. Gen. Stat. § 75-16.

### TWENTY-THIRD CAUSE OF ACTION
### (NORTH CAROLINA COUNT II: BREACH OF EXPRESS WARRANTY, N.C.G.S.A. §§ 25-2-313 AND 252A-210)

343.     Plaintiffs incorporate by reference all allegations in this Complaint as though fully set forth herein.

344.     Plaintiff Shaw (for the purposes of this count, "Plaintiff") brings this claim on behalf of themselves and the North Carolina State Class against Defendant.

345.     Defendant is and was at all relevant times a "merchant" with respect to motor vehicles under N.C.G.S.A. § 25-2-104(1) and a "seller" of motor vehicles under § 25-2-103(1)(d).

346.     With respect to leases, Defendant is and was at all relevant times a "lessor" of motor vehicles under N.C.G.S.A. § 25-2A-103(1)(p).

347.     The Class Vehicles are and were at all relevant times "goods" within the meaning of N.C.G.S.A. § 25-2-105(1) and N.C.G.S.A. § 25-2A-103(1)(h).

348.     In connection with the purchase or lease of each one of its new GMC and Chevrolet vehicles, Defendant provided an express warranty for a period of 3 years/36,000 miles of "bumper to bumper" coverage and 5 years/60,000 miles for a Powertrain warranty covering the engine and related components. For each one of its new Cadillac-branded vehicles, Defendant provided an express warranty for a period of 4 years/50,000 miles for bumper to bumper coverage, and 6 years/70,000 miles for the Powertrain coverage. These warranties exist to provide "repairs, including parts and labor, to correct any defect in materials or workmanship" in the Class Vehicles.

349.     Defendant also made numerous representations, descriptions, and promises to North Carolina State Class members regarding the performance and efficiency of their vehicles.

350.     Defendant's warranties formed a basis of the bargain that was reached when consumers purchased or leased Class Vehicles.

351.    Despite the existence of warranties, Defendant failed to inform Plaintiff and North Carolina State Class members that the Class Vehicles contained a serious Engine Defect that can lead to catastrophic engine failure and attendant safety risks.

352.    Defendant breached the express warranty promising to repair and correct Defendant's defect in materials and workmanship. Defendant has not repaired or adjusted, and has been unable to repair or adjust, the Class Vehicles' materials and workmanship defects.

353.    Affording Defendant a reasonable opportunity to cure its breach of written warranties would be unnecessary and futile here.

354.    Furthermore, the limited warranty promising to repair and correct Defendant's defects in materials and workmanship fails in its essential purpose because the contractual remedy is insufficient to make North Carolina State Class members whole and because Defendant has failed and/or have refused to adequately provide the promised remedies within a reasonable time.

355.    Accordingly, recovery by Plaintiff and North Carolina State Class members is not restricted to the limited warranty promising to repair and correct Defendant's defect in materials and workmanship, and they seek all remedies as allowed by law.

356.    Also, as alleged in more detail herein, at the time Defendant warranted and sold or leased the Class Vehicles, it knew that the Class Vehicles were inherently defective and did not conform to their warranties; further, Defendant wrongfully and fraudulently concealed material facts regarding the Class Vehicles. North Carolina State Class members were therefore induced to purchase or lease the Class Vehicles under false and/or fraudulent pretenses.

357.    Moreover, many of the injuries flowing from the Class Vehicles cannot be resolved through the limited remedy of repairing and correcting Defendant's defects in materials

and workmanship as many incidental and consequential damages have already been suffered because of Defendant's misconduct as alleged herein, and because of its failure and/or continued failure to provide such limited remedy within a reasonable time, and any limitation on the North Carolina State Class members' remedies would be insufficient to make them whole.

358.    Finally, because of Defendant's breach of warranty as set forth herein, North Carolina State Class members assert, as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to them of the purchase or lease price of all Class Vehicles currently owned or leased, and for such other incidental and consequential damages as allowed.

359.    Defendant was provided reasonable notice of these issues by way the investigation conducted by NHTSA and the resulting recall.

360.    As a direct and proximate result of Defendant's breach of express warranties, North Carolina State Class members have been damaged in an amount to be determined at trial

## TWENTY-FOURTH CAUSE OF ACTION
### (NORTH CAROLINA COUNT III: BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY N.C.G.S.A. §§ 25-2-314 AND 252A-212)

361.    Plaintiffs re-allege and incorporate by reference all paragraphs as though fully set forth herein.

362.    Plaintiff Shaw (for the purposes of this count, "Plaintiff") brings this claim on behalf of himself and the North Carolina State Class against Defendant.

363.    Defendant is and was at all relevant times a "merchant" with respect to motor vehicles under N.C.G.S.A. § 25-2-104(1) and a "seller" of motor vehicles under § 25-2-103(1)(d).

364.    With respect to leases, Defendant is and was at all relevant times a "lessor" of motor vehicles under N.C.G.S.A. § 25-2A-103(1)(p).

365.    The Class Vehicles are and were at all relevant times "goods" within the meaning of N.C.G.S.A. § 25-2-105(1) and N.C.G.S.A. § 25-2A-103(1)(h).

366.    A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to N.C.G.S.A. § 25-2-314 and N.C.G.S.A. § 25-2A-212.

367.    These Class Vehicles, when sold or leased and at all times thereafter, contained a serious Engine Defect that can lead to catastrophic engine failure and attendants safety risks. The Class Vehicles were therefore not merchantable, not fit for the ordinary purpose for which vehicles are used, and did not conform to the promises or affirmations of fact made on their labels.

368.    Defendant was provided reasonable notice of these issues by way of its own internal testing and complaint data and analysis, the regulatory recall, and a pre-suit notice letter sent by Plaintiffs.

369.    As a direct and proximate result of Defendant's breach of the implied warranty of merchantability, Plaintiff and North Carolina State Class members have been damaged in an amount to be proven at trial.

## TWENTY-FIFTH CAUSE OF ACTION
## (TEXAS COUNT I: VIOLATIONS OF THE DECEPTIVE TRADE PRACTICES ACT TEX. BUS. & COM. CODE § 17.41 ET SEQ.)

370.    Plaintiffs re-allege and incorporate by reference all paragraphs as though fully set forth herein.

371.    Plaintiff White (for the purposes of this count, "Plaintiff") brings this claim on behalf of himself and the Texas State Class against Defendant.

372.    Plaintiff and the Texas State Class are individuals, partnerships or corporations with assets of less than $25 million (or are controlled by corporations or entities with less than

$25 million in assets), see Tex. Bus. & Com. Code § 17.41, and are therefore "consumers" pursuant to Tex. Bus. & Com. Code § 17.45(4). Defendant is a "person" within the meaning of Tex. Bus. & Com. Code § 17.45(3).

373.   Defendant engaged in "trade" or "commerce" or "consumer transactions" within the meaning Tex. Bus. & Com. Code § 17.46(a).

374.   The Texas Deceptive Trade Practices – Consumer Protection Act ("Texas DTPA") prohibits "false, misleading, or deceptive acts or practices in the conduct of any trade or commerce," Tex. Bus. & Com. Code § 17.46(a), and an "unconscionable action or course of action," which means "an act or practice which, to a consumer's detriment, takes advantage of the lack of knowledge, ability, experience, or capacity of the consumer to a grossly unfair degree." Tex. Bus. & Com. Code §§ 17.45(5) and 17.50(a)(3).

375.   In the course of their business, Defendant concealed and suppressed material facts concerning the Class Vehicles, including about the Engine Defect and the effect of the recall to remedy the Engine Defect.

376.   Plaintiffs and Texas State Class members had no way of discerning that Defendants' representations were false and misleading because Texas State Class members did not have access to Defendant's internal testing and complaint data and analysis.

377.   Defendant thus violated the Act by, at minimum: representing that Class Vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that Class Vehicles are of a particular standard, quality, and grade when they are not; advertising Class Vehicles with the intent not to sell or lease them as advertised; and representing that the subject of a transaction involving Class Vehicles has been supplied in accordance with a previous representation when it has not.

378. Defendant intentionally and knowingly misrepresented material facts regarding the Class Vehicles with intent to mislead Plaintiff and the Texas State Class.

379. Defendant knew or should have known that its conduct violated the Texas DTPA.

380. Defendant owed Plaintiffs and the Texas State Class a duty to disclose the illegality and public health risks, the true nature of the Class Vehicles, because Defendants:

a. possessed exclusive knowledge that it was manufacturing, selling, and distributing vehicles throughout the United States that did not perform as advertised;

b. intentionally concealed the foregoing from Texas State Class members; and/or

c. made incomplete representations about the Class Vehicles' characteristics, performance, and fuel economy while purposefully withholding material facts that contradicted these representations.

381. Defendant's concealment of the true characteristics of the Class Vehicles' true characteristics, performance, and fuel economy was material to the Texas State Class.

382. Defendant's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including the Texas State Class, about the true characteristics, performance, and fuel economy, the quality of the Defendant's brands, and the true value of the Class Vehicles.

383. Defendant's violations present a continuing risk to the Texas State Class as well as to the general public, particularly given the increased risk of vehicle crash posed by the Engine Defect. Defendant's unlawful acts and practices complained of herein affect the public interest.

384.     Plaintiff and Texas State Class members suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's misrepresentations and concealment of and failure to disclose material information. Defendant had an ongoing duty to all its customers to refrain from unfair and deceptive practices under the Texas DTPA. All owners of Class Vehicles suffered ascertainable loss as a result of Defendant's deceptive and unfair acts and practices made in the course of Defendant's business.

385.     As a direct and proximate result of Defendant's violations of the Texas DTPA, Texas State Class members have suffered injury-in-fact and/or actual damage.

386.     Pursuant to Tex. Bus. & Com. Code § 17.50, Plaintiff and the Texas State Class seeks an order enjoining Defendant's unfair and/or deceptive acts or practices, damages, multiple damages for knowing and intentional violations, pursuant to § 17.50(b)(1), punitive damages, and attorneys' fees, costs, and any other just and proper relief available under the Texas DTPA.

387.     Pursuant to Tex. Bus. & Com. Code Ann. § 17.505, Plaintiffs sent a notice letter to Defendant. Additionally, Defendant was provided notice of the issues raised in this count and this Complaint by way by way of the investigation conducted by NHTSA and the resulting recall. The Texas State Class seeks all damages and relief to which it is entitled.

### TWENTY-SIXTH CAUSE OF ACTION
### (TEXAS COUNT II: BREACH OF EXPRESS WARRANTY TEX. BUS. & COM. CODE §§ 2.313 AND 2A.210)

388.     Plaintiffs re-allege and incorporate by reference all preceding allegations as though fully set forth herein.

389.     Plaintiff White (for the purposes of this count, "Plaintiff") brings this claim on behalf of himself and the Texas State Class against Defendant.

390.    Defendant is and was at all relevant times a "merchant" with respect to motor vehicles under Tex. Bus. & Com. Code §§ 2.104(1) and 2A.103(a)(20), and a "seller" of motor vehicles under § 2.103(a)(4)

391.    With respect to leases, Defendant is and was at all relevant times a "lessor" of motor vehicles under Tex. Bus. & Com. Code § 2A.103(a)(16).

392.    The Class Vehicles are and were at all relevant times "goods" within the meaning of Tex. Bus. & Com. Code §§ 2.105(a) and 2A.103(a)(8).

393.    In connection with the purchase or lease of each one of its new GMC and Chevrolet vehicles, Defendant provided an express warranty for a period of 3 years/36,000 miles of "bumper to bumper" coverage and 5 years/60,000 miles for a Powertrain warranty covering the engine and related components. For each one of its new Cadillac-branded vehicles, Defendant provided an express warranty for a period of 4 years/50,000 miles for bumper to bumper coverage, and 6 years/70,000 miles for the Powertrain coverage. These warranties exist to provide "repairs, including parts and labor, to correct any defect in materials or workmanship" in the Class Vehicles.

394.    Defendant also made numerous representations, descriptions, and promises to Texas State Class members regarding the performance and efficiency of its vehicles.

395.    Defendant's warranties formed a basis of the bargain that was reached when consumers purchased or leased Class Vehicles.

396.    Despite the existence of warranties, Defendant failed to inform Texas State Class members that the Class Vehicles contained a serious Engine Defect that can lead to catastrophic engine failure and attendant safety risks.

397.    Defendant breached the express warranty promising to repair and correct Defendant's defect in materials and workmanship. Defendant has not repaired or adjusted, and have been unable to repair or adjust, the Class Vehicles' materials and workmanship defects.

398.    Affording Defendant a reasonable opportunity to cure its breach of written warranties would be unnecessary and futile here.

399.    Furthermore, the limited warranty promising to repair and correct Defendant's defect in materials and workmanship fails in its essential purpose because the contractual remedy is insufficient to make Texas State Class members whole and because Defendant has failed and/or refused to adequately provide the promised remedies within a reasonable time.

400.    Accordingly, recovery by Plaintiff and the Texas State Class members is not restricted to the limited warranty promising to repair and correct Defendant's defect in materials and workmanship, and they seek all remedies as allowed by law.

401.    Also, as alleged in more detail herein, at the time Defendant warranted and sold or leased the Class Vehicles, it knew that the Class Vehicles were inherently defective and did not conform to their warranties; further, Defendants had wrongfully and fraudulently concealed material facts regarding the Class Vehicles. Texas State Class members were therefore induced to purchase or lease the Class Vehicles under false and/or fraudulent pretenses.

402.    Moreover, many of the injuries flowing from the Class Vehicles cannot be resolved through the limited remedy of repairing and correcting Defendant's defect in materials and workmanship as many incidental and consequential damages have already been suffered because of Defendant's fraudulent conduct as alleged herein, and because of its failure and/or continued failure to provide such limited remedy within a reasonable time, and any limitation on Texas State Class members' remedies would be insufficient to make them whole.

403.    Finally, because of Defendant's breach of warranty as set forth herein, Texas State Class members assert, as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to them of the purchase or lease price of all Class Vehicles currently owned or leased, and for such other incidental and consequential damages as allowed.

404.    Defendant was provided reasonable notice of these issues by way of its own internal testing and complaint data and analysis, the regulatory recall, and a pre-suit notice letter sent by Plaintiffs.

405.    As a direct and proximate result of Defendant's breach of express warranties, Texas State Class members have been damaged in an amount to be determined at trial.

**TWENTY-SEVENTH CAUSE OF ACTION**
**(TEXAS COUNT III: BREACH OF IMPLIED WARRANTY OF**
**MERCHANTABILITY TEX. BUS. & COM. CODE §§ 2.314 AND 2A.212)**

406.    Plaintiffs re-allege and incorporate by reference all paragraphs as though fully set forth herein.

407.    Plaintiff White (for the purposes of this count, "Plaintiff") brings this claim on behalf of himself and the Texas State Class against Defendant.

408.    Defendant is and as at all relevant times a "merchant" with respect to motor vehicles under Tex. Bus. & Com. Code §§ 2.104(1) and 2A.103(a)(20), and a "seller" of motor vehicles under § 2.103(a)(4).

409.    With respect to leases, Defendant is and was at all relevant times a "lessor" of motor vehicles under Tex. Bus. & Com. Code § 2A.103(a)(16).

410.    The Class Vehicles are and were at all relevant times "goods" within the meaning of Tex. Bus. & Com. Code §§ 2.105(a) and 2A.103(a)(8).

411.    A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to Tex. Bus. & Com. Code §§ 2.314 and 2A.212.

412.    These Class Vehicles, when sold or leased and at all times thereafter, contained a serious Engine Defect that can lead to catastrophic engine failure and attendants safety risks. The Class Vehicles were therefore not merchantable, not fit for the ordinary purpose for which vehicles are used, and did not conform to the promises or affirmations of fact made on their labels.

413.    Defendant was provided reasonable notice of these issues by way of its own internal testing and complaint data and analysis, the regulatory recall, and a pre-suit notice letter sent by Plaintiffs.

414.    As a direct and proximate result of Defendant's breach of the implied warranty of merchantability, Texas State Class members have been damaged in an amount to be proven at trial.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs demand judgment against Defendant on each of the above-referenced claims and Causes of Action and as follows:

a.    An order certifying the Nationwide and State Classes under the applicable provisions of Rule 23; appointing and designating the Plaintiffs to serve as representatives of the Class and applicable State Classes; and appointing the undersigned attorneys to serve as Class Counsel;

b.    An order temporarily and permanently enjoining Defendant from continuing the unlawful, deceptive, fraudulent, harmful, and unfair business conduct and practices alleged in this Complaint;

      c.      Relief in the form of a comprehensive program to fully reimburse and make whole all Class members for all costs and economic losses that resulted from the misconduct described herein;

      d.      A declaration that Defendant is financially responsible for all Class notices and the administration of Class relief;

      e.      Costs, restitution, compensatory damages for economic loss and out-of-pocket costs, multiple damages under applicable states' laws, punitive and exemplary damages under applicable law; and disgorgement, in an amount to be determined at trial;

      f.      Rescission of all Class Vehicle purchases or leases, including reimbursement and/or compensation of the full purchase price of all Class Vehicles, including taxes, licenses, and other fees;

      g.      Any and all applicable statutory and civil penalties;

      h.      An order requiring Defendant to pay both pre- and post-judgment interest on any amounts awarded;

      i.      An award of costs and attorneys' fees, as allowed by law;

      j.      Leave to amend this Complaint to conform to the evidence produced at trial; and

      k.      Such other or further relief as the Court may deem appropriate, just, and equitable.

## <u>DEMAND FOR JURY TRIAL</u>

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury of any and all issues in this action so triable of right.

Dated: May 12, 2025

Respectfully submitted,

/s/ *Scott Alan George*
Scott Alan George
**SEEGER WEISS LLP**
325 Chestnut Street, Suite 917
Philadelphia, PA 19106
Telephone: 215-564-2300
Facsimile: 215-851-8029
E-mail: sgeorge@seegerweiss.com

Christopher A. Seeger (*pro hac vice to be filed*)
**SEEGER WEISS LLP**
55 Challenger Road
Sixth Floor
Ridgefield Park, NJ 05667
Telephone: (973) 639-9100
E-mail: cseeger@seegerweiss.com

Kevin Budner (*pro hac vice to be filed*)
**LIEFF CABRASER HEIMANN &**
**BERNSTEIN, LLP**
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Telephone: (415) 956-1000
Facsimile: (415) 956-1008
E-mail: kbudner@lchb.com

David Stellings (*pro hac vice to be filed*)
Katherine McBride (*pro hac vice to be filed*)
Miranda Litwak (*pro hac vice to be filed*)
**LIEFF CABRASER HEIMANN &**
**BERNSTEIN, LLP**
250 Hudson Street, 8th Floor
New York, NY 10013
Telephone: 212.355.9500
Facsimile: 212.355.9592
E-mail: dstellings@lchb.com
kmcbride@lchb.com
mlitwak@lchb.com

*Plaintiffs' Counsel*